181 N.J. Super. 87 (1981)
436 A.2d 577
GERALD LONGO, PLAINTIFF,
v.
AMERICAN POLICYHOLDERS' INSURANCE COMPANY AND JAMES DUPREE, DEFENDANT.
Superior Court of New Jersey, Law Division Essex County.
Decided September 30, 1981.
*88 John E. Patton for plaintiff.
Albert C. Lisbona for defendant American Policyholders' Ins. Co.
William C. Carey for defendant James Dupree.
BAIME, J.D.C. (temporarily assigned).
This case concerns the triadic relationship between and among insurer, insured and counsel recently discussed by our Supreme Court in Lieberman v. Employers Ins. Co. of Wausau, 84 N.J. 325 (1980). Plaintiff instituted this action against his insurer claiming that it acted in bad faith by exposing him to payment of substantial sums in excess of policy limits in an underlying personal injury suit. See Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974).
This is a motion by plaintiff to compel production of all correspondence between defendant and the attorney it assigned to represent plaintiff in the prior action. Defendant contends that these materials fall within the purview of the attorney-client privilege. At issue is whether an insurer may invoke the privilege to preclude pretrial disclosure of confidential communications between it and the attorney it selected to represent the insured.
*89 The facts are not in dispute. Plaintiff was involved in an automobile accident in which another individual sustained severe bodily injuries. Suit was instituted against plaintiff. Defendant had issued to plaintiff a comprehensive general liability insurance policy which was in effect at the time of the accident. Under the policy, defendant was bound to pay damages with a limitation of $50,000 and to provide legal representation to its insured. Pursuant to the policy, defendant retained experienced trial counsel to represent plaintiff in the personal injury action. Plaintiff contends that defendant and the attorney corresponded frequently concerning the possibility of settling the claim. According to plaintiff, defendant initially refused to enter into negotiations pertaining to a possible settlement. Defendant ultimately offered to pay damages up to the policy limits on the date set for trial. It is alleged that this offer was refused because it was considered untimely. A settlement conference was conducted at which the claimant offered to dismiss the case for $75,000. Although the judge assigned to hear the matter recommended acceptance of the offer, defendant rejected it and the case proceeded to trial, resulting in a jury verdict of $175,000. This suit followed.
Certain prefatory comments are in order. As noted, defendant's objection to pretrial disclosure is grounded upon the attorney-client privilege. It has been said that the privilege constitutes "an accommodation of competing public interests." State v. Kociolek, 23 N.J. 400, 414 (1957). More specifically, the policy of promoting full disclosure of relevant evidence conflicts with the necessity of protecting a client's freedom to consult an attorney in confidence. In general, the attorney-client privilege constitutes a resolution of these competing social values by barring disclosure of confidential communications.
This much conceded, the privilege is at war with the principal purpose for which our courts exist and thus should be applied sparingly. Perhaps it bears repeating that the primary mission of our judicial system is to resolve disputes and to search *90 for the truth. No one currently disputes the value of full pretrial disclosure in that regard. See Jenkins v. Rainner, 69 N.J. 50, 56 (1976); Blumberg v. Dornbusch, 139 N.J. Super. 433, 437 (App.Div. 1976); Rogotzki v. Schept, 91 N.J. Super. 135, 146 (App.Div. 1966). It is axiomatic that justice is best served by affording litigants every reasonable avenue of inquiry before trial. Myers v. St. Francis Hospital, 91 N.J. Super. 377, 385 (App.Div. 1966); Caparella v. Bennett, 85 N.J. Super. 567, 571 (App.Div. 1964). Toward that end, our courts have emphatically eschewed gamesmanship and have liberally construed our discovery rules. Saia v. Bellizio, 103 N.J. Super. 465 (App.Div. 1968), aff'd 53 N.J. 24 (1968); Gureghian v. Hackensack Hosp., 109 N.J. Super. 143 (Law Div. 1970). Our Supreme Court has observed that "[t]ruth and justice are inseparable" and that a false judgment is likely to ensue when relevant evidence is suppressed. See State v. Bisaccia, 58 N.J. 586, 589 (1971). Impediments to pretrial disclosure debase the judicial process by promoting surprise. To justify so serious an insult to the search for the truth, some compensating gains should be apparent.
It is within this context that the attorney-client privilege must be construed. The privilege had its genesis in the early common law and is presently codified in Evid.R. 26. See In re Richardson, 31 N.J. 391, 396 (1960); State v. Kociolek, supra, 23 N.J. at 415; State v. Toscano, 13 N.J. 418, 424 (1953). Although not originally embodied in either constitutional or statutory provisions, the privilege has been applied in all phases of civil and criminal proceedings, including pretrial discovery. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); Macey v. Rollins Environmental Services, 179 N.J. Super. 535 (App.Div. 1981). The privilege is designed to promote "freedom of professional consultation." State v. Kociolek, supra 23 N.J. at 415. The essential policy "is grounded in the subjective considerations of the client's freedom from apprehension in consulting his legal advisor, assured by removing the risk of disclosure by the attorney even at the hands of the law." Ibid. Further, it has been said that the privilege is "an extension *91 of the client's personal privacy." State v. Sugar, 84 N.J. 1, 13 (1980). The privilege is thus predicated upon the belief inherent in our adversary system that justice is best served by fully informed advocates loyal to their client's interests.
As codified, the privilege confers protection against disclosure of confidential communications between attorney and client. Evid.R. 26. The necessary prerequisite to application of the privilege is the existence of an attorney-client relationship. See Hansen v. Janitschek, 31 N.J. 545, 547 (1960); Palateni v. Sarian, 15 N.J. Super. 34, 38 (App.Div. 1951). Even where such a relationship exists, numerous exceptions have been carved out of the privilege by virtue of countervailing policy considerations. Among these exceptions is the situation in which several individuals retain the same attorney to act for them in common. Specifically, Evid.R. 26 provides that "[w]here two or more persons have employed a lawyer to act for them in common, none of them can assert [the] privilege as against the others as to communications with respect to that matter." I conclude that this exception is applicable here.
It has been recognized that the tripartite relationship between and among insurer, insured and counsel is fraught with real and potential conflicts of interest. See Lieberman v. Employers Ins. of Wausau, supra 84 N.J. at 338; Mallen and Levit, Legal Malpractice, § 262 at 352-353 (1977); Corboy "Defending Insurance Companies and the Insured," 55(3) Chi. Bar Rec. 102 (1973); Note, "Insurer's Liability for Refusal to Settle," 50 S.Cal.L.Rev. 751 (1977). Insurance defense counsel routinely represent two clients: the insurer and the insured. Although our courts have generally disfavored representation of multiple clients by an attorney in a single case (see e.g., State v. Bellucci, 81 N.J. 531 (1980); In re Opinion No. 415, 81 N.J. 318 (1979); In re Levinsohn, 72 N.J. 1 (1976)), only recently has this delicate relationship been the subject of litigation with respect to counsel retained by an insurer to represent its insured. Lieberman v. Employers Ins. of Wausau, supra. Problems are particularly acute with respect to counsel's representation of an insurer and *92 the insured. The attorney's relationship with the insurer is contractual and often ongoing. In contrast, his representation of the insured is usually transitory. Mallen, "Insurance Counsel: The Fine Line Between Professional Responsibility and Malpractice," 45 Ins. Counsel J. 244, 245 (1978). The "insured's interest in the litigation will vary according to the magnitude of the claim." Note, "Insurer's Liability For Refusal to Settle," supra at 752. Only if there is a possibility that the claim will exceed the policy limits will the insured have a direct pecuniary interest in disposition of the suit. Further, the interests of the insurer and the insured in settling a claim may well conflict. For these reasons, our courts have carefully scrutinized the role of counsel in such litigation. See Lieberman v. Employers Ins. of Wausau, supra. In this context, our Supreme Court has characterized as "paramount" the loyalty owed to the insured by the attorney. Id. 84 N.J. at 338. A lawyer so retained is duty-bound to represent the insured with undivided fidelity. His ethical obligation is in no sense diminished by reason of his relationship with the insurer.
In sum, it is my conclusion that this case falls squarely within the exception set forth in Evid.R. 26. The attorney represented both the insurer and the insured. Counsel owed the insured the same unqualified loyalty as he would had he been personally retained. It was incumbent upon him to represent the interests of the insurer and the insured with due diligence. The rights of one could not be subordinated to those of the other. If the attorney had reason to believe that the discharge of his duties to the insured would collide with his ethical obligation to the carrier, he was duty-bound to withdraw from the case. Thus, full pretrial disclosure will not frustrate the policy underlying the privilege. To the extent that the interests of both clients were coterminous, neither had reason to fear disclosure of communications to the other. In short, the exception set forth in Evid.R. 26 bars invocation of the privilege by one client against the other.