**TRAILWAYS FINANCE AND ACCEPT-
ANCE CORPORATION**

v.

**EURO–FLO TOURS, INC.**

v.

**TRAILWAYS OF NEW ENGLAND, INC.
and American Buslines, Inc.**

Civ. A. No. 83–514.

United States District Court,
D. New Jersey.

Oct. 18, 1983.

Donald J. Olenick, Kramer, Levin, Nessen, Kamin & Frankel, New York City, for plaintiff and third-party defendants.

A. Albert Eichler, Eichler, Forgosh, Gottilla & Rudnick, Irvington, N.J., for defendant and third-party plaintiff.

## OPINION

STERN, District Judge.

This is an action for breach of three contracts concerning the sale of three buses "as is." Plaintiff and third-party defendants have moved for summary judgment and dismissal of defendant's counterclaims and third-party complaint based on what they consider to be unambiguous contract terms. Because we find that the plain meaning of the contracts supports no other result, the motions will be granted.

### I.

In early 1982, Europe Lucas, president of Euro-Flo Tours, Inc. ("Euro-Flo"), contacted Trailways, Inc. in order to purchase used buses. After telephone discussions with Frank Millet, director of used bus sales for Trailways, Inc., Lucas travelled to Hoboken, New Jersey, the site where the buses were located, in order to inspect the buses and sign the contracts. According to Lucas, he was allowed to look at the buses in the Hoboken garage, but he was not allowed to drive the buses on test runs. Lucas Aff. ¶ 3. Lucas also claims that the person in charge represented that the buses, in their present condition, satisfied New Jersey reg-

ulations regarding the transportation of school children and adults. *Id.* In March, April, and June of 1982, Lucas signed three contracts which set forth the conditions of sale for three buses.

The three contracts at issue in this suit are, for the most part, identical. The first contract was entered into between Euro-Flo and Trailways of New England, Inc., a wholly-owned subsidiary of Trailways, Inc., for the sale of a 1970 Silver Eagle Motor Coach, Serial Number 8328. The contract was signed by Lucas, on behalf of Euro-Flo, on March 26, 1982; it was subsequently forwarded to Trailways of New England in Dallas, Texas, whose vice president signed the contract on April 8, 1982. The total price of the bus was $79,579.68, to be paid in the following installments: an initial payment of $11,263.68, due on June 24, 1982, to be followed by 47 monthly installments of $1,298.25 beginning on August 1, 1982 and continuing through July 1, 1986. Under an acceleration provision, the seller or any assignee retained the right upon failure of the purchaser to make any payment to declare all amounts to be immediately due and payable. Contract, ¶ 8. In addition, the contract provided that the seller reserved a security interest in the property. *Id.* at ¶ E. The contract further provided that any question of validity, construction, enforcement, or interpretation would be governed by the substantive law of Texas, *id.* at ¶ 16, and the subsequent assignee would be entitled to all of the rights and remedies of the initial seller. *Id.* at ¶ 11. In addition, the contract included in bold-face capitalized letters above the signature lines the following notice to the purchaser:

> PURCHASER ACKNOWLEDGES AND AGREES THAT THIS CONTRACT SHALL BE ASSIGNED BY SELLER TO TRAILWAYS FINANCE AND ACCEPTANCE CORPORATION ("ASSIGNEE") AND FURTHER AGREES THAT THIS CONTRACT SHALL NOT BE BINDING OR EFFECTIVE UNTIL SO ACCEPTED BY ASSIGNEE AT DALLAS, DALLAS COUNTY, TEXAS.

The contract was assigned by Trailways of New England to Trailways Finance and Acceptance Corp. ("Trailways Finance"), a sister corporation of Trailways, Inc., on April 8, 1982, by an assignment provision located on the contract below the signature lines. Euro-Flo was notified of the assignment by letter dated April 7, 1982. Joyce Aff., Ex. D.

An express term and condition of the contract was that no warranties of any sort attached to the sale of the used bus. Prominently displayed in bold type, the "as is" provision of the contract stated:

> The Property consists of one or more used motor vehicles and is being sold to Purchaser hereunder "AS IS," WITHOUT ANY WARRANTY, EXPRESS OR IMPLIED. No warranties, express or implied, including without limitation any implied warranty of merchantability and any implied warranty of fitness for a particular purpose, representations, promises, or statements have been made with regard to the Property of Seller or shall be claimed by Purchaser unless endorsed hereon in writing. Purchaser will bear the entire expense of repairing or correcting any defects that presently exist or that may occur in such vehicles.

Contract, ¶ 10. Moreover, an additional provision made clear that the contract constituted the final agreement between the parties:

> This contract supersedes all agreements and communications, oral or written (including, but not limited to, any purchase order heretofore or hereafter issued by Purchaser), between Purchaser and Seller, and may not be modified, or terminated (except as hereinafter provided) except by a writing executed by Purchaser and Seller or its assignee.

*Id.* at ¶ 17. Finally, above the signature line, in bold print, the contract stated: "NOTICE TO PURCHASER: DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT ...."

The two other contracts which are the subject of this suit contain all of the above provisions, and differ from the first contract in only three respects. First, the sell-

er was American Buslines, Inc., another wholly-owned subsidiary of Trailways, Inc., which upon signing the two contracts immediately assigned them to Trailways Finance in exactly the same manner as had Trailways of New England under the first contract. Second, the subjects of the two contracts were respectively one 1970 Silver Eagle Motor Coach, Serial Number 8190, and one 1971 Silver Eagle Motor Coach, Serial Number 8467. Third, the prices and terms of payment varied slightly: the sale price of Bus Number 8190 was $79,579.68, to be paid by an initial installment of $11,-263.68 on June 29, 1982, and 47 monthly installments of $1,298.25 beginning on August 1, 1982 and continuing through July 1, 1986; the sale price of Bus Number 8467 was $79,926.22, to be paid by an initial installment of $10,888.22 on August 25, 1982, and in 47 monthly installments of $1,254.97 beginning on October 1, 1982 and continuing through September 1, 1986. The contract for Bus Number 8190 was signed by Lucas on behalf of Euro-Flo on April 2, 1982, and was signed and assigned by American Buslines on April 20, 1982; the contract for Bus Number 8467 was signed by Lucas on June 7, 1982, and was signed and assigned by American Buslines on June 14, 1982.

Trailways Finance, the assignee of all three contracts, claims that it received one payment of $5,500.00 toward the first bus, and that it has received nothing more on any of the three buses. According to Larry Joyce, the person in charge of the Credit Department of Trailways Finance, he visited Lucas on August 10, 1982, to discuss the delinquent payments on the three buses. Joyce claims that at that visit, Lucas promised that the payments would be forthcoming as soon as he received payment on one of his own accounts. Joyce Aff., ¶ 13. Between July 29, 1982 and October 25, 1982, several checks were sent by Lucas to Trailways Finance, but Lucas subsequently asked that they not be cashed due to insufficient funds on the part of Euro-Flo. *Id.* at ¶¶ 15–17. After waiting to cash these checks, Trailways Finance finally presented them for payment on November 5, 1982.

*Id.* at ¶ 18. Trailways Finance wrote Euro-Flo on November 23, 1982, again advising the latter of its delinquency; almost immediately upon the sending of this letter the Euro-Flo checks were returned for insufficient funds. *Id.* at ¶¶ 19–20. Another letter was sent by Trailways Finance on November 29, 1982, informing Euro-Flo of the returned checks, to which Lucas responded by letter of December 10, 1982, seeking a further extension of time to make payments. *Id.* at ¶¶ 21–22. When no payments were received, Trailways Finance notified Euro-Flo on January 21, 1983 that it was in default on all three contracts, and that if all back installments were not paid, with interest, by January 31, 1983, the remaining amounts due under the contracts would be accelerated as of February 1, 1983, and would become due and payable without further notice. *Id.* at ¶ 24. Euro-Flo neither made payments nor returned the buses to Trailways Finance. *Id.* at ¶ 26. On February 15, 1983, Trailways Finance filed its complaint in this action, seeking full payment on all three contracts or the return of the three buses. Euro-Flo responded by filing counterclaims of misrepresentation against Trailways, and by filing a third-party complaint against Trailways of New England and American Buslines. Plaintiff and third-party defendants now move for summary judgment.

## II.

Movants argue that since there is no dispute that money is owed on the contracts, and since it is clear that the contracts permit acceleration upon default, they are entitled to summary judgment on the issue of liability, as well as dismissal of the counterclaims and third-party complaint. In the face of clear contractual language supporting this result, defendant raises three grounds for denial of summary judgment. We find all three unpersuasive.

■ Defendant's primary argument is that summary judgment should not be granted in that material disputed issues of fact exist with respect to alleged misrepre-

sentations or warranties made by either plaintiff or third-party defendants concerning the condition of the buses. More specifically, Euro-Flo charges that agents of plaintiff and third-party defendant corporations made various representations and warranties that the buses would "meet the specific needs of the defendant", "would qualify and meet the required standards for school buses", and that "no additional equipment or services would be required to make the motor coaches meet the said standards." Defendant's Br. at 9–10. Admitting that defendant has raised issues of fact that are in dispute, we nonetheless find that they are not material since they constitute defenses that are squarely barred by the express terms of the contracts. *See, Dworman v. Mayor and Board of Aldermen,* 370 F.Supp. 1056, 1064 (D.N.J.1974) (disputes involving the interpretation of unambiguous contracts are resolvable as a matter of law and are, therefore, appropriate subjects for summary judgment).

Under the Uniform Commercial Code, as adopted in Texas,[1] "as is" clauses, where conspicuous and unambiguous, are clearly permitted as a means of contractually abrogating express or implied warranties of merchantability and fitness. As stated in Section 2.316 of the Texas Business and Commerce Code:

(b) Subject to Subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

(c) Notwithstanding Subsection (b)

(1) unless the circumstances indicate otherwise, all implied warranties are

excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty . . . .

Tex.Bus. & Com.Code Ann. § 2.316(b), (c)(1) (Vernon 1982). *See, Mid-Continent Aircraft Corp. v. Curry County Spraying Service, Inc.,* 572 S.W.2d 308 (Tex.1978) ("as is" provision effectively disclaims implied warranties, and shifts entire risk as to the quality of the product to the purchaser).

The language of the "as is" provision of the contract precisely precludes claims of misrepresentation or breach of any express or implied warranties of fitness or merchantability. *See supra* at p. 1228. That language is prominently printed, written in unambiguous, comprehensive, and easily intelligible language, and enhanced by the supercession provision in ¶ 17 stating that the contract represents the totality of the parties' intents and understandings. Defendant, through its president, a man who for seven years has been in the business of operating, buying and selling buses, Lucas Aff. at ¶ 12, simply cannot defend its failure to pay for the buses based on allegations of misrepresentation or breach of warranty when the contract distinctly forecloses such arguments. In the absence of any allegation of fraud, summary judgment is warranted.

■ Defendant Euro-Flo next argues that summary judgment is inappropriate since material disputed issues of fact exist concerning whether or not Trailways Finance is a holder in due course. While not immediately apparent, it seems that Euro-Flo is contending that if it is the case that Trailways Finance is not a holder in due course, then Euro-Flo can assert defenses such as misrepresentation against Trailways Finance, just as it could against the original assignors of the contracts. To the extent that this argument correctly states the law, it is irrelevant in this case. Trail-

---

1. Defendant admits that interpretation and enforcement of the contracts are governed by the

laws of Texas. Answer, ¶¶ 3, 5 and 7.

ways Finance does not maintain that it can recover on the contracts in the face of Euro-Flo's counterclaims because it is a holder in due course, thereby taking free and clear of defenses—rather, Trailways Finance argues that as assignee of the contracts it stands in precisely the same shoes as its assignors, and can therefore rely on the "as is" provisions to shield it from Euro-Flo's claims of misrepresentation. With this argument we agree. Movants prevail because the contract explicitly dictates this result, not as a function of the intricacies of Article 3 of the Uniform Commercial Code.

Defendant's final attempt to escape summary judgment is based upon alleged disputed issues of fact concerning the custom of the trade in selling buses. Defendant asserts that it relied on "the custom of the trade and the usage of the language used in buying and selling of school buses, which would indicate ... that the buses were represented as qualifying to be used as motor coaches in the operation of school charter as well as school contract buses." Lucas Aff. at ¶ 4. Defendant, however, would have the Court consider extrinsic evidence regarding trade customs to contradict the express terms of the contract, something Texas law does not permit:

> Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (1) by course of dealing or usage of trade ....

Tex.Bus. & Com.Code Ann. § 2.202 (Vernon 1982). Paragraph 17 of each contract makes it clear that the written contract supersedes any oral agreements; to the extent that custom or usage of trade is relevant, therefore, it is only to explain or supplement, not to contradict, the written contract.

In sum, we are unpersuaded that any material factual dispute exists which precludes the entry of summary judgment in favor of plaintiff and third-party defendants based upon the plain language of the contract. We find that defendant Euro-Flo waived any right to assert the defenses of misrepresentation, breach of warranty, or trade custom as a means to circumvent payment on the buses when it signed the contracts containing the "as is" provisions. Accordingly, summary judgment will be entered [2] and defendant's counterclaims and third-party complaint will be dismissed.

**2.** At oral argument on September 26, 1983, the Court indicated that summary judgment was ordered only on the issue of liability. Subsequent to that hearing, the parties agreed that damages on the contracts amounted to $190,-000.00. Furthermore, the contracts provided for reasonable attorney's fees and disbursements to be paid by Euro-Flo in connection with collection activity by Trailways Finance. Contract, ¶ 9. At a hearing on October 13, 1983, the parties agreed that reasonable attorney's fees incurred by plaintiff and third-party defendants amounted to $5,000.00 and disbursements totaled $1,602.31. The parties having so stipulated, we will enter judgment in these amounts.