**DOME PETROLEUM LIMITED, et al., Plaintiffs,**

**v.**

**EMPLOYERS MUTUAL LIABILITY INSURANCE CO. OF WISCONSIN, et al., Defendants.**

**Civ. A. No. 84–97.**

United States District Court, D. New Jersey.

May 4, 1990.

**64**

Morrill J. Cole, Cole, Schotz, Bernstein, Miesel & Forman, Hackensack, N.J., for plaintiffs.

Joseph J. Fleischman, Hannoch Weisman, Roseland, N.J., for defendants.

## OPINION

WOLIN, District Judge.

This matter is before the Court on both plaintiffs' and defendants' appeal from Magistrate Haneke's Order dated February 10, 1987 and the Magistrate's Findings and Conclusions filed September 27, 1989. The Magistrate's original order and later opinion denied the application of plaintiffs Dome Petroleum Limited and Dome Energy Limited (collectively "Dome") for an order compelling Raymond Jast, Esq., counsel for defendant Employers Mutual Liability Insurance Company of Wausau ("Employers"), to respond to deposition questions concerning his communications with defendant The First Jersey National Bank ("First Jersey") and granted plaintiffs' application for an order compelling defendants to respond to a Document Demand by providing a list of documents to which a privilege would be asserted. Dome appeals from that part of the order which denied their application to compel certain deposition testimony and defendants appeal from that part of the order which compelled the production of the list of privileged documents. Both parties claim that the Magistrate's decision was contrary to law.

## I. BACKGROUND

A complete history of this action may be gleaned from the previous, Third Circuit opinion issued in this action and a previous Third Circuit opinion issued in a prior action involving the same transaction. *See The First Jersey National Bank v. Dome Petroleum Limited ("Dome I")*, 723 F.2d 335 (3d Cir.1983) and *Dome Petroleum Ltd. v. Employers Mutual Liability Insurance Co. ("Dome II")*, 767 F.2d 43 (3d Cir.1985). For the purposes of the appeals before the Court a brief background in the facts of this litigation is required.

In 1981, First Jersey acted as a depository in connection with the tender offer of Dome for the stock of Conoco Inc. ("Conoco"). In the course of performing its duties as depository, First Jersey rejected as untimely the appropriate and timely tenders of Conoco shares by the State Street Group. The State Street Group was unable to participate in Dome's tender offer. After realizing its error, First Jersey paid the State Street Group $3.5 million in compensation. First Jersey obtained a loan in this amount from its insurer, Employers, with the understanding that First Jersey would attempt to recover the money pursuant to an indemnification clause in the depository agreement between Dome and First Jersey. The Third Circuit held that under that clause, Dome was required to indemnify First Jersey for the $3.5 million dollars. Thereafter, First Jersey repaid the loan to Employers. Dome then commenced the present suit against Employers and First Jersey seeking to be reimbursed either from Employers as subrogee of First Jersey, or from First Jersey for their having destroyed Dome's subrogation rights.

The first issue before the Court is whether the Magistrate erred in determining that Jast, the attorney for Employers who negotiated the loan between Employers and First Jersey, may assert a privilege and refuse to answer deposition questions concerning those negotiations. The second issue before the Court is whether the Magistrate erred by compelling defendants to provide a comprehensive list of documents whose disclosure defendants' believed to be privileged.

## II. DISCUSSION

A magistrate's adjudication of a non-dispositive motion will be set aside only if the

order is found to be clearly erroneous or contrary to law. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1113 (3d Cir. 1986), *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987) (citing 28 U.S.C. § 636(b)(1)(A)); *see also* Fed.R.Civ.P. 72(a); General Rule 40 D(4) of the U.S.Dist.Ct. for the Dist. of N.J. This Court will determine that a finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). The Magistrate's order may also be reversed if it is found that his determination was contrary to law. The Magistrate has delegated authority pursuant to 28 U.S.C. § 636(b)(1) to exercise wide discretion in fashioning appropriate discovery orders. Several courts have also held that a magistrate's determination in a discovery dispute is entitled to great deference and reversible only for an abuse of discretion. *See Environmental Tectonics v. W.S. Kirkpatrick & Co.*, 659 F.Supp. 1381, 1399 (D.N.J.1987) (citing cases), *aff'd in part, rev'd in part*, 847 F.2d 1052 (3d Cir.1988); *see also, Schroeder v. Boeing Commercial Airplane Co.*, 123 F.R.D. 166 (D.N.J.1988).

**A. Motion to Compel Deposition Answers**

First, the Court will entertain the appeal from the Magistrate's denial of Dome's motion to compel deposition answers from Raymond Jast, Esq. who was counsel for Employers during the transactions at issue in this matter. Throughout the entirety of the judicial proceedings in the matter, Jast has refused to answer questions relating to the loan receipt agreement and to communications between himself and Employers and First Jersey. That refusal has been based on the claim of one or more of four privileges: (a) an attorney-client privilege between Jast and Employers; (b) an attorney-client privilege between Jast and First Jersey; (c) an insurer-insured privilege between Employers and First Jersey; and (d) a joint defense privilege between Employers and First Jersey.

Dome contends that because Dome is subrogated to the rights of First Jersey as against Employers under the subrogation clause of the agreement between Dome and First Jersey, Dome "stands in the shoes" of First Jersey. Dome contends that this enables Dome to obtain information known by Jast without reaching the question of whether an attorney-client privilege attaches. Under Dome's theory, since Dome is First Jersey for the purposes of asserting the rights at issue in Count I, Dome is the "client" for the purposes of obtaining the information from Jast. Dome asserts that the assignee or subrogee of an insured has the same rights as the insured to obtain information known to the attorney who represented the insured and the insurer. Dome further argues that a joint defense privilege is not available to Employers and First Jersey for the above reasons and because separate attorneys represented each party to the negotiations.

Employers and First Jersey assert that the arguments Dome has put forward have no validity where there is no dispute between the insured and the insurer. Defendants' claim that Dome is an outsider to Employers and First Jersey's common interest in this litigation, and therefore, Dome is not entitled to learn of Jast's communications during the negotiations between the two. Defendants contend that only where an adversarial relationship exists between the insured and the insurer may the privilege which protects communications between the parties be breached. Defendants also argue that at the time of the relevant negotiations Employers and First Jersey were represented by separate counsel and, therefore, Jast may assert a joint defense privilege. Again, defendants contend that the "subsequent litigation" exception to that privilege only applies if there is a dispute between the insured and the insurer. In addition, defendants contend that the joint defense privilege may only be waived by consent of all the parties to the joint defense when each party had separate counsel. After hearing argument, the Magistrate denied Dome's motion to compel deposition answers finding that "Dome's subrogation arguments do not

give Dome the same rights that First Jersey has with respect to information in the hands of Jast as counsel for First Jersey and Employers." Magistrate's Findings and Conclusions, filed September 27, 1989, p. 12.

### 1. The Attorney–Client and Joint Defense Privileges

In order to properly evaluate the appeal before the Court, it is helpful to first briefly explore the doctrines of attorney-client privilege and the joint defense privilege. These privileges are found in N.J.S.A. § 2A:84A–20 (Evid.R. 26) (West 1976) ("Rule 26"). As codified in Rule 26, the attorney-client privilege confers protection against disclosure of confidential communications between attorney and client. *Longo v. American Policyholders' Ins. Co.*, 181 N.J. Super. 87, 91, 436 A.2d 577 (Law Div.1981). However, this privilege is not absolute and does not extend to every type of confidential communication from the client to the attorney. *State v. Humphreys*, 89 N.J. Super. 322, 325, 215 A.2d 32 (App.Div.1965).

The proper application of the attorney-client privilege requires an understanding of the public policy underlying the privilege. The United States Supreme Court has explained that "the privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to 'encourage full and frank communications between attorneys and their clients.'" *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553, 561, 483 A.2d 821 (App.Div. 1984), *quoting Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The New Jersey Supreme Court has stated that " '[p]reserving the sanctity of confidentiality of a client's disclosures to his attorney [promotes] an open atmosphere of trust' ". *Wolosoff*, 196 N.J.Super. at 561, 483 A.2d 821, *quoting Reardon v. Marlayne*, 83 N.J. 460, 470, 416 A.2d 852 (1980).

Notwithstanding those general sentiments, the New Jersey courts have recognized that the privilege results in the suppression of evidence and that, to some ex-

tent, this conflicts with the general judicial goal of truth-seeking. *Wolosoff*, 196 N.J. Super. at 561, 483 A.2d 821. The New Jersey courts have described the privilege as " 'an accommodation of competing public interests.' " *Longo*, 181 N.J.Super. at 89, 436 A.2d 577, *quoting State v. Kociolek*, 23 N.J. 400, 414, 129 A.2d 417 (1957). "More specifically, the policy of promoting full disclosure of relevant evidence conflicts with the necessity· of protecting a client's freedom to consult an attorney in confidence. In general, the attorney-client privilege constitutes a resolution of these competing social values by barring disclosure of confidential communications." *Longo*, 181 N.J.Super. at 89, 436 A.2d 577. However, the *Longo* court concluded that "[t]he privilege is at war with the principal purpose for which our courts exist and thus should be applied sparingly." *Longo*, 181 N.J.Super. at 89, 436 A.2d 577.

The *Longo* court went on to explain that "even where such a relationship exists, numerous exceptions have been carved out of the privilege by virtue of countervailing policy considerations. Among these exceptions is the situation in which several individuals retain the same attorney to act for them in common." *Longo*, 181 N.J.Super. at 91, 436 A.2d 577. This exception is commonly referred to as the joint defense privilege. In fact, Rule 26 specifically provides that "[w]here two or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter." N.J.S.A. § 2A:84A–20.

The Third Circuit Court recently defined the joint defense privilege as "protect[ing] communications between an individual and an attorney for another when the communications are 'part of an on-going and joint effort to set up a common defense strategy.' " *Matter of Bevill, Bresler & Schulman Asset Manag.*, 805 F.2d 120, 126 (3d Cir.1986), *quoting Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir.), *cert denied sub nom., Wasserstrom v. Eisenberg*, 474 U.S. 946, 106 S.Ct. 342–43, 88 L.Ed.2d 290 (1985). The Third Circuit held that "[i]n order to establish the existence of a joint

defense privilege, the party asserting the privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *Bevill*, 805 F.2d at 126 (citation omitted). In *Longo*, the New Jersey court found that the situation between the insurer and the insured was the same as the situation between parties to a joint defense and held that the attorney-client privilege did not attach to communications between the insurer and the attorney who was retained by the insurer to represent the insured when the insured demanded discovery of those communications in a subsequent lawsuit. *Longo*, 181 N.J.Super. at 92, 436 A.2d 577. Therefore, consistent with *Longo*, the attorney-client privilege should not attach to communications between First Jersey and Employers, when Dome seeks discovery of those communications as the subrogee of First Jersey. The Court also finds that Employers has failed to carry its burden of proving that a joint defense effort existed at the time these communications were made which would allow the assertion of such a privilege.

### 2. Analogies to Subrogation

The Third Circuit Court has determined that Dome is subrogated to the rights of First Jersey as against Employers, First Jersey's insurer. *Dome II*, 767 F.2d at 47. "Under New Jersey law, subrogation is an equitable devise by which the subrogee, having paid for a loss to the subrogor, steps into the shoes of the subrogor to assert any claim it had against a third party who in good conscience ought to pay for the loss." *Dome II*, 767 F.2d at 45, citing *Standard Accident Ins. Co. v. Pellecchia*, 15 N.J. 162, 104 A.2d 288 (1954). The Third Circuit determined that Dome could maintain a claim against Employers as a subrogee to First Jersey's claims under the depository agreement. *Dome II*, 767 F.2d at 47.

However, the Third Circuit has not yet spoken on the applicability of the attorney-client privilege to Dome, as a subrogee of First Jersey. Therefore, the Magistrate should have, and this Court will, look to the decisions of other courts which have addressed analogous issues in order to determine the applicability of the attorney-client privilege to a party in Dome's position. Several legal relationships bear a similarity to Dome and First Jersey's subrogation relationship in the present action. These analogous situations include: (1) the trustee of a corporation in bankruptcy, (2) a stockholder and corporation and (3) an excess insurer subrogated to the claims of the insured against a primary insurer.

#### (a) The Trustee of a Corporation in Bankruptcy

The United States Supreme Court has held "that the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications." *Commodity Futures Trading Commission v. Weintraub*, 471 U.S. 343, 358, 105 S.Ct. 1986, 1996, 85 L.Ed.2d 372 (1985). Because a corporation may only act through its agents, the power of a solvent corporation, to waive the corporate attorney-client privilege rests with the corporation's management and is normally exercised by the officers and directors of the corporation. *Commodity Futures*, 471 U.S. at 348, 105 S.Ct. at 1991. However, when a corporation goes into bankruptcy, the ability to waive the privilege rests with the trustee in bankruptcy. "[T]he actor whose duties most closely resemble those of management should control the privilege in bankruptcy, unless such a result interferes with policies underlying the bankruptcy laws." *Id.* at 351–52, 105 S.Ct. at 1992.

It is clear that a trustee in bankruptcy maintains a stronger legal interest in the bankrupt corporation than a subrogee has in the subrogor. In *Commodity Futures*, the Supreme Court explained that since the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor and severely limits the powers of the debtor's directors, it is the trustee who plays the role most closely analogous to that of a solvent corporation's management. *Id.* at 353, 105 S.Ct. at 1993. In the

instant case, Dome does not, in any manner, exercise authority or control over the operations of First Jersey. Dome only controls the right to assert any claims which First Jersey would be entitled to assert in a specific situation.

However, certain aspects of the position of a trustee in bankruptcy are similar to aspects of the position of a subrogee. The magistrate in *Commodity Futures* defined a trustee as "a successor in interest of all assets, rights and privileges of [the corporation], including the attorney/client privilege...." *Id.* at 1990. As a subrogee, Dome is a "successor in interest" to the claims that First Jersey is entitled to make, including those against its insurer, Employers, concerning the $3.5 million loss. From this it follows that, as a successor in interest to those claims, Dome, would be in a position to waive the attorney-client privilege as it pertains to communications between First Jersey, Employers and their attorneys regarding the claims Dome is entitled to assert.

(b) A Corporation and Its Shareholders

Another legal relationship which bears some similarity to the instant case is that of a corporation and its shareholders. In *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970), the Fifth Circuit held that a corporation's ability to interpose the attorney-client privilege in a suit where stockholders charge the corporation acted inimically to stockholder interest is tempered by the right of the stockholders to show cause why the privilege may not be asserted in that particular instance. *Id.* at 1103–04. The court required this procedure in order to protect the interests of the stockholders, the corporation and the general public. *Id.*

In *Garner*, stockholders of a corporation attempted to gain access to discussions between the corporation and the corporation's attorney which occurred in furtherance of the issuance and sale of the stock specifically at issue in the underlying litigation. The *Garner* court was concerned with balancing the possible injury to the corporation resulting from disclosure and the societal benefit gained by the correct disposal of litigation. The court focused on the situation "where the client asserting the privilege is an entity which in the performance of its functions acts wholly or partly in the interests of others, and those others, or some of them, seek access to the subject matter of the communications." *Garner*, 430 F.2d at 1101. The Court explained that even though the corporate entity and/or its management may have interests which, at times, are adverse to the interests of the stockholders, the duties and obligations of the corporation and its management ultimately run to the benefit of the stockholders. In making its determination, the *Garner* court also relied on the analogy of the fiduciary relationship between the corporation and its stockholders to that of the joint defense situation where an attorney acts for two or more parties having a common interest. *Garner*, 430 F.2d at 1103.

Just as the stockholders and the corporation in *Garner* shared a commonality of interest, First Jersey and Dome, as its subrogee, have a mutual interest in the insurance policy with Employers. Dome, because of its position as subrogee, shares First Jersey's interest in obtaining protection from the liability of the loss at issue in the instant case. Since, as Employers has conceded, First Jersey was covered by the policy with Employers for this type of loss, it is logical that First Jersey's subrogee, Dome, would also expect to be covered by this insurance for the instant loss. Similar to the situation where the joint defense privilege might apply, Dome shares a common interest with First Jersey in the provisions of the insurance policy with Employers regarding coverage and in the arrangements which First Jersey and Employers made concerning the loan receipt agreement. Therefore, similar to the situation of the joint defense privilege, Jast, as the insurer's attorney, should not be entitled to assert the attorney-client privilege against Dome, the insured's subrogee, as to communications concerning the subject of their common interest. *See Longo*, 181 N.J.Super. at 92, 436 A.2d 577.

However, there is an important distinction between the relationship of a subrogor to a subrogee and that of the corporation

to its shareholders. The corporation's management owes a fiduciary duty to its shareholders. Therefore, the interests of management are often inherently aligned with that of the shareholders. In the instant case, First Jersey does not owe a fiduciary duty to Dome when it makes its business decisions. First Jersey's alleged contract and/or tort duty not to interfere with Dome's subrogation rights does not rise to the level of a ·fiduciary obligation. Yet that relationship does provide the commonality of interest, at least as to the rights subrogated, of which the *Garner* court was concerned. At a minimum, the opinion in the *Garner* case offers guidance on the suitability of the attorney-client privilege in the situation where common interests are involved.

### (c) An Excess Insurer Subrogee

In the case of *Central Nat. Ins. Co. v. Medical Protective Co.*, 107 F.R.D. 393 (E.D.Mo.1985), an excess insurer, who was subrogated to the claims of the insured against the primary insurer, was held to "stand[ ] in the shoes of the insured" for the purpose of determining whether the attorney-client privilege attached. *Id.* at 395.[1] That court's logic and rationale proves persuasive in the determination of the present issue because of the analogous subrogation relationships involved. The *Central National* court held that the attorney-client privilege did not attach to the excess insurer's discovery requests because that party was subrogated to the claims which the insured could assert against the primary insurer. *Id.*

The *Central National* court explained that the duty owed to the excess insurance carrier by the primary carrier was identical to the duty which the primary insurer owed to the insured and that, therefore, the excess insurer could assert any claims against the primary insurer which the insured could have asserted. *Id.* The court

analogized its situation to that of an assignment of rights. *Id. citing to Simpson v. Motorists Mutual Insurance Co.*, 494 F.2d 850 (7th Cir.), *cert. denied*, 419 U.S. 901, 95 S.Ct. 184, 42 L.Ed.2d 147 (1974). In *Simpson*, the court found that the attorney-client privilege did not attach to communications between the insurance company and its attorney as against the assignee of the insured's claims against the insurance company. The court held that the fact "that the insured's claim was assigned ... did not constitute grounds for the application of the attorney client privilege." *Id.* at 855.

Domes's position as subrogee to the rights of First Jersey against Employers, is strikingly similar to the position of the excess insurer in *Central National* who was subrogated to the claims of the insured against the primary insurer and to the assignee of the insured's claim in *Simpson*. Applying the *Central National* court's rationale to the facts of the instant case, Dome, standing in the shoes of First Jersey for the purposes of this litigation, may discover the communications between First Jersey and Employers relevant to this litigation because the attorney-client privilege does not attach to those communications.

### 3. Public Policy Considerations

In addition to the guidance which the above situations provide, the clearly articulated public policy concerns of the New Jersey courts would require disclosure in this instance. The New Jersey Supreme Court has adopted a tripartite test to determine when the attorney-client privilege must yield to other important societal concerns. The New Jersey Supreme Court has held that:

> In order to validly pierce a privilege such as the attorney-client privilege, there must be a legitimate need of a party to

---

1. The New Jersey District Court has affirmed the proposition that an assignee of a contract "stands in precisely the same shoes as its assignors" in regard to the provisions of that contract. *Trailways Finance v. Euro–Flo Tours, Inc.*, 572 F.Supp. 1227, 1231 (D.N.J.1983); *see also Southeastern Pa. Trans. Auth. v. Transit Cas. Co.*, 55 F.R.D. 553 (E.D.Pa.1972), where the court viewed the assignee of all claims under an insurance policy as having stepped into the shoes of the assignor and thereafter considered "the insured" for purposes of the attorney-client privilege analysis.

reach the evidence sought to be shielded, there must be a showing of relevance and materiality of that evidence to the issue before court, and it must be shown that the information could not be secured from any less intrusive source. *In re Kozlov*, 79 N.J. 232, 243–45, 398 A.2d 882 (1979). In light of this test, the New Jersey Appellate Division has declared that it is "persuaded that 'when confidential communications are made the material issue in a judicial proceeding, fairness demands waiver of the privilege'" *Wolosoff*, 196 N.J.Super. at 567, 483 A.2d 821, quoting *United States v. Mierzwicki*, 500 F.Supp. 1331, 1335 (D.Md.1980).

At this stage of the instant litigation, it appears that the extent of coverage and the circumstances surrounding the negotiation of the loan receipt agreement are material issues. The law of this case states that "the subrogation language [in the depository agreement with First Jersey] makes clear the intent that Dome assumed liability only insofar as necessary to prevent loss to First Jersey and specifically reserved the right to shift the ultimate loss onto third parties liable to First Jersey. [Therefore, the] contractual agreement is only effective to the extent that Employers' policy with First Jersey assumed ultimate responsibility." *Dome II*, 767 F.2d at 47. The New Jersey courts have looked to the "language of the contract in light of the circumstances surrounding the transaction" in order to interpret contract provisions. *See Dome II*, 767 F.2d at 47 *quoting Communication Workers of America, Local 1087 v. Monmouth County Board of Social Services*, 96 N.J. 442, 476 A.2d 777 (1984) and *Newark Publishers' Association v. Newark Typographical Union No. 103*, 22 N.J. 419, 126 A.2d 348 (1956). Consequently, the determination as to whether either Dome or Employers is the ultimate risk-bearer, or whether the loss is to be shared between the two, rests on an interpretation of the insurance policy and the loan receipt agreement in light of the circumstances in which they were negotiated. The communications between Jast and Employers and/or First Jersey are relevant to this determination.

### 4. *The Applicability of the Privilege*

■ Privileges asserted in federal court are "governed by the principles of common law as they may be interpreted by the courts of the United States in light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law." Fed.R.Evid. 501. The validity of a privilege is to be determined on a case-by-case basis. *Upjohn*, 449 U.S. 383, 396–97, 101 S.Ct. 677, 686 (1981). The Third Circuit has held that "the applicability of a privilege is a factual question" and the determination of "the scope of a privilege is a question of law." *Bevill*, 805 F.2d at 124, *citing to United States v. Liebman*, 742 F.2d 807, 809 (3d Cir.1984).

After having reviewed the factual record from which the Magistrate determined that the attorney-client privilege attached to the communications between Jast and First Jersey and could be applied to prevent First Jersey's subrogee from discovering those communications, the Court is left with the definite and firm conviction that a mistake has been committed. Therefore, the Court holds that the Magistrate's finding that the attorney-client privilege applies in this situation is clearly erroneous and is subject to reversal. In addition, after a thorough review of the legal authorities in the field of privilege discussed above, the Court finds that to the extent Dome's interest is coterminous with that of First Jersey under the subrogation agreement, Dome steps into the shoes of First Jersey for the purpose of the attorney-client privilege analysis. The Magistrate's finding to the opposite is contrary to the applicable and relevant law, and beyond the discretion afforded the fashioning of discovery orders.

■ Specifically, the Court finds that the assertion of an attorney-client privilege between Jast and Employers is irrelevant to the matter before the Court since the dis-

covery request dealt with the communications between Jast and First Jersey during the negotiations over the loan receipt agreement. The Court finds that if there is any argument to be made that an attorney-client privilege existed between Jast and First Jersey, it could only fall under the rubric of the insurer-insured privilege. That privilege may not be asserted against First Jersey's subrogee to First Jersey's claim against Employers for the reasons stated above. The Court also finds that a joint defense privilege between Employers and First Jersey may not be asserted against Dome for the reasons previously recited. Therefore, the Court will reverse the order of the Magistrate and order that Jast answer the deposition questions to which he asserted a privilege not to answer.

**B.** *Motion to Compel Production of a List of Privileged Material*

■ The Magistrate also ordered that defendants comply with valid document demands by providing a list of the documents which would not be provided because a privilege was asserted as to them. The Magistrate specifically stated at oral argument that he was not deciding the merits of any claim of privilege, or of the validity of any particular document request, but only affording plaintiff the opportunity to discover what documents, which would be responsive to document production requests, defendants would refuse to provide because of an assertion of a privilege. The Court finds that this order is within the appropriate boundaries of the Magistrate's discretion in discovery matters. The Court holds that this order is not contrary to law, clearly erroneous, or an abuse of discretion and will, therefore, be affirmed.

### III. CONCLUSION

For the reasons set out above the Court finds that the Magistrate's determination that Jast could properly assert the attorney-client privilege and refuse to answer the questions put to him at his deposition was clearly erroneous and contrary to law. Therefore, the Court will reverse the deter-

mination of the Magistrate and order that the questions at issue be answered. The Court will affirm the decision of the Magistrate to compel the production of a list of documents to which the attorney-client privilege was to be claimed as within the Magistrate's discretion to fashion appropriate discovery orders.

An appropriate order is attached.