190 N.J. Super. 567 (1983)
464 A.2d 1177
HISTORIC SMITHVILLE DEVELOPMENT CO., A NEW JERSEY GENERAL PARTNERSHIP, PLAINTIFF-APPELLANT,
v.
CHELSEA TITLE & GUARANTY COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT CROSS APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 1, 1983.
Decided July 27, 1983.
*568 Before Judges MATTHEWS, ANTELL and FRANCIS.
David M. McCann argued the cause for appellant (Carpenter, Bennett & Morrissey, attorneys; David M. McCann of counsel and Rosemary A. Hall and Francis X. Ferrara on the brief).
Armen Shahinian argued the cause for respondent (Wolff & Samson, attorneys; Armen Shahinian and Laurie A. Jacobs on the brief).
The opinion of the court was delivered by ANTELL, J.A.D.
On November 17, 1977 suit was brought by the Attorney General of the State of New Jersey, in an action entitled Hyland v. Burgess, against Chelsea Title and Guaranty Company, defendant *569 herein, Historic Smithville Inns, Inc., a corporate subsidiary of ABC Leisure Attractions, Inc., and others, challenging, among other things, Smithville Inns' title to approximately 300 acres of land in Galloway Township and the City of Port Republic in Atlantic County. The suit was based upon claims that the lands had been fraudulently acquired some 15-20 years earlier by Chelsea, acting in concert with others, and thereafter conveyed to Smithville Inns.
Because title to the lands was insured under a title insurance policy issued by Chelsea on August 30, 1974 Smithville Inns called upon Chelsea to provide a defense. In an exchange of correspondence during December of 1977 it was agreed that owing to the uniqueness of the circumstances arising from Chelsea's presence as a defendant in the action Smithville would engage as its independent counsel the firm of Hannoch, Weisman, Stern and Besser and that Smithville Inns' expenses therefor would be reimbursed by Chelsea. Acting on behalf of Smithville Inns, the Hannoch firm filed in February 1978 its answer to the Attorney General's complaint and included therein a cross-claim against Chelsea for its "alleged fraud", seeking compensatory and punitive damages, attorney's fees and costs. The cross-claim was amended on August 8, 1980 by enlarging upon the allegations of fraud.
On May 14, 1979 Historic Smithville Development Co., a general partnership, plaintiff herein, acquired the capital stock of Smithville Inns, thereafter liquidated that corporation's assets by distributing them to itself and took title by separate deed to the lands aforesaid.
The arrangement with respect to the payment of the Hannoch firm's fees continued until January 1979 when Chelsea refused to continue the payments. Various reasons were given for its refusal and this suit was brought by plaintiff on August 6, 1980 to compel payment of the fees. Essentially, the defenses were that plaintiff was not an "insured" under the terms of the title policy and that the Hannoch firm had placed itself in a position *570 of conflicting interests by pursuing the cross-claim alleging fraud on behalf of plaintiff. By order dated March 16, 1981 partial summary judgment was entered determining plaintiff to be an insured under the title policy and striking defendant's claim to the contrary as a defense. Defendant cross appeals from that order. The issue remaining in the case focuses on whether the Hannoch firm is carrying on a dual representation of rival interests.
Plaintiff appeals herein from an order of the Chancery Division dated February 22, 1983 granting broad discovery into the nature and extent of the services rendered plaintiff by the Hannoch firm. Without detailing the character of the information ordered disclosed, there is no doubt that it would ordinarily be protected by the attorney-client privilege and the work product rule. Chelsea, however, argues that the information was properly ordered disclosed for the reason that the Hannoch firm was retained to represent with undivided loyalty the interests of the insured and the insurer, and because of the dual representation and the conflict resulting therefrom the privilege is inapplicable. The source of Chelsea's rationale is to be found in the following language of Lieberman v. Employers Insurance of Wausau, 171 N.J. Super. 39, 49-50 (App.Div. 1979), aff'd as modified, 84 N.J. 325, 339 (1980):
An attorney provided by an insurance company to represent an insured defendant owes that person the same unswerving allegiance that he would if he were retained and paid by the defendant himself. Newcomb v. Meiss, 263 Minn. 315, 116 N.W.2d 593, 598 (Sup.Ct. 1962); Jackson v. Trapier, 42 Misc.2d 139, 247 N.Y.S.2d 315, 316 (Sup.Ct. 1964). While he owes to both a duty of good faith and due diligence in the discharge of his duties, the rights of one cannot be subordinated to those of the other. Imperiali v. Pica, 338 Mass. 494, 156 N.E.2d 44, 47 (Sup.Jud.Ct. 1959). Consequently, whenever counsel in such case has reason to believe that the discharge of his duty to the insured would conflict with the discharge of his duty to the insurance carrier, he cannot continue to represent both.
See also Bartels v. Romano, 171 N.J. Super. 23, 29 (App.Div. 1979); Longo v. American Policyholders' Ins. Co., 181 N.J. Super. 87, 91 (Law Div. 1981).
*571 We find the foregoing authorities to be inapplicable for the reason that the Hannoch firm's engagement in the Hyland case never contemplated, even remotely, representation on behalf of Chelsea. It was manifest from the beginning that the interests of Smithville and Chelsea were hopelessly incompatible. This was clearly recognized in the letters of December 2, 1977 and December 9, 1977 between ABC, Smithville Inns' parent corporation, and Chelsea in which the parties decided upon the manner in which Smithville would be represented. In its letter of December 2, after noting that "(u)nder the circumstances attending this litigation and given the facts alleged in the complaint, we are sure you agree that we should select our own counsel," ABC informed Chelsea that it had chosen the Hannoch firm to serve as its lead counsel. That letter informed Chelsea that Hannoch had been instructed to bill Smithville periodically and stated that it would submit those statements to Chelsea "for reimbursement." It closed by saying that
to the extent that there is no conflict between your position and ours, counsel, of course, have been instructed to cooperate and work jointly with you in the defense of this action.
To this Chelsea replied on December 9 in the following language:
Your suggestion that your company's subsidiary, Historic Smithville Inns, Inc., engage its own counsel to defend it in the action filed in the Superior Court of New Jersey, Chancery Division, Atlantic County, entitled as above is acceptable to our company and your counsel selection is highly acceptable to us. Please submit to us the statements from your counsel after payment so that we may reimburse your company.
We would appreciate you having your counsel keep us advised as the matter progresses which you can appreciate is necessary for our files and records. You may be fully assured that our company will cooperate completely with you and your counsel in connection with the defense of this action. [Emphasis supplied].
The repeated reference to "your counsel" leaves no doubt about Chelsea's understanding that the irreconcilable conflict between the two foreclosed any possibility that their respective interests could not be represented with undivided loyalty by the same attorney. Nor is there any question about the parties' intention that Smithville would hire its own attorney to represent it in the *572 case, that it would pay the bills submitted by its attorney and be later reimbursed therefor by Chelsea. Other than to say it would "appreciate" being kept abreast of developments by the Hannoch firm, Chelsea postulated no conditions. Clearly, a lawyer-client relationship between Hannoch and Chelsea was not contemplated. The arrangement is distinctly different from those in the cases relied upon by Chelsea wherein an attorney selected by the insurer was assigned to represent the insured in the defense of a covered claim. More is required to establish a lawyer-client relationship than, as appears here, merely that the insurer ultimately absorbs the cost of the insured's legal representation.
As to Chelsea's claim of a conflict of interest, it is precisely this which the parties recognized in this anomalous situation where Chelsea was charged by the Attorney General with having created a defect in the very title it had insured and was called upon to defend. Chelsea's alleged fraud lay at the heart of the Attorney General's suit, and it could not have been overlooked that any reasonably competent counsel would, in addition to resisting the claim of defective title, take all measures integral to the representation of Smithville, including the recovery of damages from Chelsea for fraud if it were proven. This is the course followed by the Hannoch firm in February 1978, nearly a full year before Chelsea decided that the attorney's conflicting loyalties effectually relieved it from reimbursing Smithville for fees.
In substance, Chelsea contends, in support of the conclusion reached by the trial court, that the material ordered disclosed is excepted from the lawyer-client privilege under the following language of Evid. R. 26(2):
Where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter.
Because we have determined that the Hannoch firm was retained only to represent Smithville, not Chelsea, even though the expenses of representation were to be borne by the latter, *573 the foregoing exception is unavailable and we conclude that the trial court erred in granting the discovery order of February 22, 1983. That order is, accordingly, reversed. As to Chelsea's cross-appeal from the order of March 16, 1981, striking its defense that plaintiff herein is not an insured under its title policy, we affirm for the reasons stated by Judge Haines in his formal written opinion for the Chancery Division which is published at 184 N.J. Super. 282 (Ch.Div. 1982).