259 N.J. Super. 308 (1992)
612 A.2d 1338
IN RE ENVIRONMENTAL INSURANCE DECLARATORY JUDGMENT ACTIONS.
HM HOLDINGS, INC., THE GLIDDEN COMPANY AND SMITH CORONA CORPORATION, PLAINTIFFS-APPELLANTS,
v.
LUMBERMENS MUTUAL CASUALTY COMPANY, AMERICAN MOTORISTS INSURANCE COMPANY, CONTINENTAL CASUALTY INSURANCE COMPANY, ZURICH INSURANCE COMPANY, FALCON INSURANCE COMPANY, FORMERLY TITLED EMPLOYERS SURPLUS LINES INSURANCE COMPANY, CERTAIN LLOYD'S UNDERWRITERS AND COMPANIES, INSURANCE COMPANY OF NORTH AMERICA, EMPLOYERS INSURANCE OF WAUSAU A MUTUAL COMPANY, EMPLOYERS COMMERCIAL UNION INSURANCE COMPANY, HOME INSURANCE COMPANY, HARTFORD ACCIDENT & INDEMNITY COMPANY, GRANITE STATE INSURANCE COMPANY AND INDUSTRIAL INDEMNITY COMPANY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1992.
Decided September 18, 1992.
*310 Before Judges ANTELL, BAIME and THOMAS.
Adrienne W. Danforth argued the cause for appellants (Hannoch Weisman, attorneys; John E. Heintz, Adrienne Danforth and Wendy M. Anderson admitted pro hac vice of Howrey & Simon and Kevin J. Bruno and Suzanne Q. Chamberlin on the brief).
John G. McAndrews and John B. LaVecchia argued the cause for respondents (Ronca, McDonald & Hanley and Connell, Foley & Geiser, attorneys; John G. McAndrews and Nancy N. Sipp admitted pro hac vice of Mendes & Mount and Robert J. Kovacs and John B. LaVecchia on the brief).
Pitney, Hardin, Kipp & Szuch submitted a brief on behalf of amicus curiae Ingersoll-Rand Company, General Electric Company as successor in interest to RCA Corporation and Union Carbide Corporation (Donald W. Kiel and Kathy Dutton Helmer on the brief).
The opinion of this court was delivered by THOMAS, J.S.C., temporarily assigned.
*311 Plaintiffs appeal, pursuant to leave granted, a trial court's discovery order compelling them to produce materials which they contend are protected by the attorney-client privilege. On various theories, the trial court held the material was not subject to that privilege.

FACTS
Plaintiffs are the subject of numerous claims for injuries arising from exposure to hazardous waste material located at different sites throughout the country. Plaintiffs brought the present declaratory judgment action seeking to define the obligation of the defendant insurance companies to defend and indemnify plaintiffs in pending and future claims. The order under appeal requires;
[p]laintiffs to produce all documents prepared and used in the underlying actions involving such sites, regardless of the date such documents were obtained or prepared, which documents were previously withheld on the grounds of privilege [and]
... [in camera inspections of] communications and/or materials generated solely in preparation for the present declaratory judgment action....
These rulings requiring disclosure were based on three reasons:
1) that the insurance company defendants share a common interest with plaintiffs in defending and settling environmental clean-up actions;
2) that the cooperation clause found in plaintiffs' policies vitiated any expectations of confidentiality plaintiffs may have had; and
3) that plaintiffs "put into issue their conduct in the underlying litigation" by bringing the present declaratory judgment action.
The documents plaintiffs assert are privileged include:
 internal memoranda and notes prepared by outside or in-house counsel in anticipation or during the course of the underlying litigation;
 internal memoranda and notes prepared by [plaintiffs'] employees at the direction of outside or in-house counsel in anticipation or during the course of the underlying litigation;
 communications between environmental consultants retained by [plaintiffs] or its counsel and outside counsel or [plaintiffs] in anticipation or during the course of the underlying litigation; and

*312  concerning the non-owned sites, communications between [plaintiffs'] outside counsel and counsel for other defendants in the underlying actions which are protected pursuant to the Joint Defense Agreement.
Prior to the court's order, plaintiffs had produced approximately 100,000 documents, including consultant reports submitted to and by various governmental authorities regarding the sites; voluminous test data relating to the sites which were collected prior to the underlying litigation; invoices and correspondence with waste haulers who transported wastes from plaintiffs' facilities; internal memoranda concerning plaintiffs' disposal of its wastes written at the time disposal was occurring; and all correspondence with governmental agencies concerning the sites and settlement of claims arising from the sites. In addition, plaintiffs have identified numerous witnesses in their answers to interrogatories whom defendants may interview and/or depose to acquire information. Pursuant to this discovery, defendants have contacted over forty witnesses and deposed at least fourteen, most of whom are former or current employees of plaintiffs. Defendants are presently following a continuing schedule of taking the deposition of these witnesses. Defendants also have access to all test results and reports generated by local, state, and national authorities relating to the sites. In addition, they have access to all documents generated by plaintiffs concerning the activities which allegedly caused the environmental pollution. Plaintiffs have withheld those documents they contend are protected by the attorney-client privilege, i.e., those documents created by or for defense counsel that summarize plaintiffs' operations and make recommendations for their defense.

ATTORNEY-CLIENT PRIVILEGE
The basic premise of our attorney-client privilege bears restating:
The attorney-client privilege is deeply embedded in our jurisprudence and formed a part of the common law of England prior to the birth of this country. [Citations omitted]. "While the privilege was not originally embodied in either constitutional or statutory provisions," our Legislature ultimately codified it in *313 N.J.S.A. 2A:84A-20. [Citation omitted]. It presently appears in our Rules of Evidence. See Evid.R. 26. The privilege recognizes that sound legal advice or advocacy serves public ends and rests on the need to "encourage full and frank communication between attorneys and their clients." [Citations omitted]. "Preserving the sanctity of confidentiality of a client's disclosures to his attorney [promotes] an open atmosphere of trust." [Citation omitted]. Where the privilege is applicable, "it must be given as broad a scope as its rationale requires." [Citation omitted].
Nevertheless, the privilege must be anchored to its essential purpose. Our courts have thus recognized that the privilege results in suppression of evidence and to that extent is at war with the truth. [Citations omitted]. In another context, our Supreme Court observed that "[t]ruth and justice are inseparable" and that a false judgment is likely to ensue when relevant evidence is suppressed. [Citation omitted]. We have also recognized that justice is best served by affording litigants every reasonable avenue of inquiry before trial. [Citations omitted]. Toward that end, we have emphatically discouraged gamesmanship and have liberally construed our discovery rules. [Citation omitted]. Impediments to pretrial disclosure "debase the judicial system by promoting surprise." [Citation omitted]. To justify so serious an insult to the search for the truth, "some compensating gain should be apparent." [Citation omitted].
United Jersey Bank v. Wolosoff, 196 N.J. Super. 553, 561-562, 483 A.2d 821 (App.Div. 1984).

COMMON INTEREST EXCEPTION TO PRIVILEGE
The first basis the trial court used for ordering production of the contested documents was an exception to the attorney-client privilege based upon the "common interest" of the parties. Plaintiffs contend a common interest or joint client exception does not apply because such exception must be based upon a common attorney-client relationship with the insurers' defense counsel. No such relationship has existed because defendants have refused to participate in defending the underlying litigation. We agree with plaintiffs' position.
Generally, communications between counsel and their clients in the course of a professional relationship are privileged and clients have the right to refuse to disclose such communication and to prevent counsel from disclosing it. Evid.R. 26(1). However, "where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as *314 against the others as to communications with respect to that matter." Evid.R. 26(2)(c). We affirmed that application of the rule in Historic Smithville Dev. Co. v. Chelsea Title and Guaranty Co., 190 N.J. Super. 567, 464 A.2d 1177 (App.Div. 1983). In Historic Smithville, plaintiff brought suit against a title insurer to compel payment of counsel fees incurred after plaintiff hired outside counsel to represent it in a land fraud action. From the beginning of the fraud suit, the insurer and plaintiff engaged separate counsel because it was clear that their positions were totally irreconcilable. There was never any intention to mount a joint defense despite the fact that the insurer ultimately paid plaintiff's counsel costs. We held the common interest exception of Evid.R. 26(2)(c) does not apply when the insurer does not have an actual attorney-client relationship with the policyholder's counsel.
The defendant insurers in the instant case have never defended the claims against plaintiffs nor paid for the defense of the underlying litigation. They continue to deny coverage or accept an obligation to defend with respect to future claims. Despite the trial judge's conclusion that the parties were not adversarial until the declaratory judgment action was filed, it is clear that an adversarial line was drawn very early in the matter by the insurers' refusal to defend. There is no indication that counsel hired by plaintiffs to protect their own interests ever intended to conduct a joint defense with the insurers. There was no attorney-client relationship between plaintiffs' counsel and the defendant insurers. Therefore, the foregoing exception is unavailable to the defendants as a means of compelling plaintiffs' privileged documents.
Despite the caveat in Evid.R. 26(2)(c) requiring the joint employment of an attorney before the "common interest" exception applies, the trial judge found plaintiffs and defendants share a "common interest" with respect to the defense and settlement of the various actions and therefore were entitled to documents plaintiffs withheld as privileged. There is authority for this position. When there is an adversarial position between *315 an insurer and a policyholder concerning coverage, "the two maintain a common interest in the underlying litigation with respect to the ultimate liability for payment to the underlying claimants." Waste Management, Inc. v. International Surplus Lines Ins. Co., 144 Ill.2d 178, 161 Ill.Dec. 774, 579 N.E.2d 322 (1991). The opposite position has also been expressed, holding that the common interest held by insurers and policyholders to resolve claims is insufficient to invoke the common interest exception to the attorney-client privilege where no joint defense exists or has been undertaken. Carey-Canada, Inc. v. Aetna Casualty & Surety Co., 118 F.R.D. 250 (D.D.C. 1987).
Obviously both plaintiffs and their insurers share the common goal or "interest" of defeating the claims in the underlying actions. The argument can also be made that plaintiffs' counsel "represents" the insurers in a limited sense in the underlying litigation, since the defendants would ultimately be liable for payment if plaintiffs are successful in their declaratory action. They therefore have a common interest to the extent of minimizing the exposure of the underlying claims. Regardless, our rule plainly states the common interest exception only applies when the parties "have employed a lawyer to act for them in common." [Emphasis added]. Evid.R. 26(2)(c). The fact that plaintiffs' actions inure to their insurers' ultimate benefit does not create an "employment" of plaintiffs' counsel on the insurer's behalf. It is clear that no joint representation was undertaken in the instant matter. Given the plain language of this rule, common interest alone, without more, does not invoke the exception.

THE COOPERATION CLAUSE IN THE POLICY
Next, the trial judge concluded plaintiffs were obliged to produce the disputed documents based upon application of *316 the cooperation clause contained in plaintiffs' policies.[1] The cooperation clauses of the policies, we feel, are inapplicable because the defendant insurers have failed to defend the underlying actions or pay defense costs. Cooperation clauses impose a duty on insureds to assist insurers in the conduct and defense of actions. To that end, insureds are generally required to provide all such information and assistance as the insurer may require. See Dougherty v. Hanover Ins. Co., 114 N.J. Super. 483, 487-488, 277 A.2d 242 (Law Div. 1971); Metropolitan Casualty Ins. Co. v. Richardson, 81 F. Supp. 310, 314-315 (D.C.Ill. 1948). However, that duty to cooperate should be limited to situations where insurers actually conduct or pay for the defense of underlying claims and actions. To afford the defendant insurers access to confidential defense information would enable them to both demand cooperation from their insured in the defense of underlying actions while at the same time allowing them to disavow coverage. Such a result is an anomaly.
Here, the trial judge reasoned there was no adversarial relationship between plaintiffs and their insurers until the declaratory judgment action was filed. Since the parties were not adverse until that time, he felt any information gathered or prepared in the underlying litigation concerning matters to which plaintiffs and their insurers had a common interest should be produced. That conclusion is flawed because the insurers were never "adverse parties" in the underlying litigation. They would more accurately be described as "non-parties" at that point. Defendants' refusal to defend the underlying action was obviously adverse to plaintiffs' interests and so was the denial of coverage. Under these circumstances, there can be no reliance on the cooperation clause on the basis that plaintiffs had not yet started an "adversary" proceeding by way of a declaratory judgment action.
*317 Nevertheless, plaintiffs cannot totally avoid application of the cooperation clauses of the policies on the insurers' refusal to defend. As noted, the parties do share a common interest in ultimately defeating the claims of the underlying claimants. However, it is clear the insurers' interests in denying coverage do not comport with plaintiffs' interest. The question, therefore, is whether and to what extent that "common interest" requires disclosure under the cooperation clauses in this action to compel coverage.
The trial court ordered production of all documents prepared with regard to the underlying litigation. We feel this is too broad insofar as it includes material encompassed by the attorney-client privilege rule (Evid.R. 26). We agree there should be disclosure of all material facts:
While the insured has no obligation to assist the insurer in any effort to defeat recovery of a proper claim, the cooperation clause does obligate the insured to disclose all of the facts within his knowledge and otherwise to aid the insurer in its determination of coverage under the the policy.
Waste Management, Inc. v. International Surplus Lines Ins. Co., supra, 579 N.E.2d at 333, 161 Ill.Dec. at 785.
We also conclude material created in the underlying action at the direction of plaintiffs' attorneys, should be produced but only upon satisfaction of the three prong test set forth in In re Kozlov, 79 N.J. 232, 398 A.2d 882 (1979), where the Supreme Court said:
There must be a legitimate need of the party to reach the evidence sought to be shielded. There must be a showing of relevance and materiality of that evidence to the issue before the court.... But it must also be shown, ... by a fair preponderance of the evidence including all reasonable inferences, that * * * the information * * * could not be secured from any less intrusive source. [Citation omitted, emphasis supplied].
Id. at 243-244, 398 A.2d 882.
Mental impressions, legal conclusions, opinions or theories of plaintiffs' attorneys and communications between plaintiffs and their attorneys (both in house and out) will remain privileged and not discoverable.

*318 WHEN CONFIDENTIAL COMMUNICATIONS BECOME A MATERIAL ISSUE
The trial judge lastly concluded that disclosure of privileged material was mandated because plaintiffs put their conduct in the underlying litigation in question by filing the declaratory judgment action. The judge found plaintiffs were attempting to conceal the very information at issue, in the present action.
In United Jersey Bank v. Wolosoff, supra, 196 N.J. Super. at 557-558, 483 A.2d 821, we held that, "the attorney-client shield may be pierced when confidential communications are made a material issue by virtue of the allegations in the pleadings and where such information cannot be secured from any less intrusive source." Wolosoff involved a suit to set aside a settlement which plaintiff alleged was induced by defendant's misrepresentation of its assets. Under those circumstances, "reasonable reliance" constituted a critical element of plaintiff bank's claim against defendant. We, therefore, ordered the disclosure of those usually confidential communications with counsel, that were probative as to the issue of the bank's reliance on representations made by the settling defendant. We also ordered the trial judge to conduct an in camera review for a determination of which communications were between the attorney and client and then to further determine if the attorney-client privilege should appropriately be waived because the communications bore on the issue of reasonable reliance. We agree with that method of proceeding here.
We emphasize that production of materials prepared in anticipation of litigation should be provided in accordance with R. 4:10-2(c). This rule provides that a party may obtain such discovery only upon certain preconditions and that mental impressions, etc. of an attorney are not discoverable. Accordingly, such material need be produced:
only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *319 In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
R. 4:10-2(c). See also R. 4:10-2(d)(3).
This rule applies in the instance case. Therefore, in addition to the materials already supplied to the insurers, plaintiffs need only produce those materials for which the insurers can show a substantial need and undue hardship in obtaining. For example, the interview report of a deceased employee would qualify. Otherwise, the insurers should develop their own information from the factual material and sources provided.
The disputed documents in the declaratory judgment action should be submitted, in camera, for determination of their privileged status. If privileged, and a showing of substantial need and undue hardship is made, they should be produced. Documents which are strictly "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation" are privileged and protected from disclosure except when they are the subject of the controversy itself.

CONCLUSION
Discovery here must proceed within the framework of our discovery rule, R. 4:10-2, our evidence rule, Evid.R. 26(1) and (2), and the principles set forth in Wolosoff and Kozlov. Thus, we hold plaintiffs must provide discovery as to all material facts in both cases, but need not disclose communications with their attorneys (including house counsel) in either the underlying or present case. Any work product developed at the request of their attorneys in anticipation of any trial may only be discovered upon a showing of substantial need and undue hardship as set forth in R. 4:10-2(c) and Kozlov. Non-disclosure of impressions, conclusions, opinions, and theories of their attorneys must be honored. An exception occurs when the confidential communication itself becomes a material issue in *320 the litigation. In such case, resolution of discovery requests as to information alleged to be privileged must be decided by the trial judge in an in camera review of the disputed materials. The order presented for review is vacated and the matter is remanded for further proceedings in accordance with this opinion.
NOTES
[1] The actual clauses of the various policies involved were not made a part of the record. We depend upon the trial court's opinion for their content.