NL INDUSTRIES, INC., Plaintiff,

v.

COMMERCIAL UNION INSURANCE
COMPANY, et al., Defendants,

v.

CERTAIN UNDERWRITERS AT
LLOYD'S, et al., Third
Party Defendants.

Civ. No. 90–2125.

United States District Court,
D. New Jersey.

Oct. 16, 1992.

ristown, N.J., for International Surplus Lines Ins. Co.

Ronald H. DeMaria, DeMaria, Ellis & Hunt, Newark, N.J., for Evanston Ins. Co.

Irwin Philip Burzynski, Scarpone & Edelson, Newark, N.J., for Certain Underwriters at Lloyd's.

Edward J. Boccher, Mudge, Rose, Guthrie, Alexander & Ferdon, Parsippany, N.J., for Insurance Co. of North America.

Bruce A. Tritsch, Feinberg, Feinberg & Tritsch, Rahway, N.J., for Northbrook Excess and Surplus Ins. Co.

Andrew T. Berry, McCarter & English, Newark, N.J., for NL Industries, Inc.

M. Carole Duffy, Einhorn, Theodore E.B. Einhorn, Einhorn, Harris, Ascher & Barbarito, Denville, N.J., for Commercial Union Ins. Co.

Kathleen M. Carson, German, Gallagher & Murtagh, Cherry Hill, N.J., for Stonewall Ins. Co.

John B. La Vecchia, Connell, Foley & Geiser, Roseland, N.J., for Aetna Casualty & Surety Co. of America.

Michael J. O'Mara, Crawshaw & Mayfield, Cherry Hill, N.J., for Lexington Ins. Co.

Michael Francis O'Neill, Purcell, Ries, Shannon, Mulcahy & O'Neill, P.C., Bedminster, N.J., for First State Ins. Co.

Shawn Lunney Kelly, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for American Centennial Ins. Co.

Bruce A. Tritsch, Feinberg, Feinberg & Tritsch, Rahway, N.J., for Utica Mut. Ins. Co.

Mark M. Tallmadge, Bressler, Amery & Ross, Morristown, N.J., for International Ins. Co.

Sandra Young, Chicago, Ill., and Mark Tallmadge, Bressler, Amery & Ross, Mor-

## OPINION & ORDER

PISANO, United States Magistrate Judge:

## INTRODUCTION

This matter involves a complex dispute over insurance coverage for environmental claims. Plaintiff NL Industries (NL) is, or was, the owner of some three hundred and eighty-five (385) sites which are either the subject of liability claims or remediation. Defendants[1] and third party defendants[2] are insurance carriers who have been sued for liability and indemnity coverage, and for reimbursement of plaintiff's defense costs and counsel fees. Defendant carriers have denied NL coverage for a variety of reasons, and therefore this action has continued and procedurally is in the discovery phase. During the course of discovery, the parties were required to identify eighteen (18) representative sites as to which they would take discovery. The pending motions relate to discovery disputes on the representative sites.

In the situation at bar, defendant insurers have demanded, pursuant to *Fed. R.Civ.P.* 26 and *N.J.S.A.* 2A:84A–20(2)[3],

1. Commercial Union Insurance Company, Stonewall Insurance Company, Aetna Casualty and Surety Company of America, Lexington Insurance Company, Midland Insurance Company, First State Insurance Company, Insurance Company of North America, American Centennial Insurance Company, Utica Mutual Insurance Company, National Union Fire Insurance Company of Pittsburgh, Pa., International Insurance Company, International Surplus Lines Insurance Company, and Evanston Insurance Company.

2. Certain underwriters at Lloyd's, London (the London insurers), the Insurance Company of North America, Northbrook Excess and Surplus Insurance Company, and Commercial Union Insurance Company.

3. This Court presumes that New Jersey law is applicable pursuant to *Fed.R.Evid.* 501.

that NL produce documents which relate to their defense of the underlying liability claims. These documents are identified in two separate privilege logs described in an August 30, 1991 letter written by counsel for NL. Plaintiff asserts that the documents being withheld contain materials protected under the work product doctrine and the attorney-client privilege.

NL, in turn, has demanded that third party defendant London insurers produce all documents relating to the Environmental Claims Group (ECG). Specifically, NL requests agendas, notes and descriptions of ECG meetings, reports to, from or by the ECG addressing insurance coverage issues, and position papers to, from or by the ECG addressing the same. (October 9, 1992 Letter by the London insurers, at 1 and NL Second Request for Documents No. 1).

The ECG is a group of market leaders [4] created on behalf of subscribing insurers to coordinate the administrative tasks [5] associated with the increased volume of pollution claims being filed in the mid–1980s. (March 6, 1992 Letter by defendant London insurers, at 2, citing *Teff* Affidavit at 10). The ECG concluded that the legal services required by the London insurers should be handled by a select group of American law firms. *Id.* Toplis & Harding, succeeded by London Market Claims Services, Ltd., was hired to circulate the materials prepared by the American firms to only the London insurers whose policies were subject to at least one environmental claim. *Id.* This was done to maintain confidentiality and thus ensure the preservation of privileges. *Id.*

In response to NL's discovery request, the London insurers maintain that the ECG documents are not relevant to the issues involved in this lawsuit and are also pro-

tected by the work product and attorney-client privileges.

This Court is therefore called upon once again to decide the applicability of privilege within the context of pollution insurance coverage litigation. As was presented in prior cases,[6] the insured plaintiff has been sued for various pollution claims, it demanded coverage from its insurance carriers which coverage was denied, and plaintiff thereafter had to defend itself against the asserted claims. Now in litigation against its own carriers, plaintiff is asked to reveal the nature of communications between its agents and its counsel held within the course of the underlying claim litigation, and to turn over its attorneys' work product. Plaintiff has objected to the demand on the basis that the materials are protected by the attorney-client and the work product privileges.

And as has typically been the case, the defendant carriers seek to overcome the hurdle of privilege by asserting that they have a "common interest" with plaintiff, and that plaintiff has placed otherwise privileged communications "in issue" by commencing a lawsuit for coverage of the claims.

For the reasons stated herein, each claim of privilege is upheld. Furthermore, plaintiff's discovery demand for the ECG position papers is additionally denied on the grounds that the material is not relevant.

## ANALYSIS

I. Privileges protecting NL's litigation documents

*Work Product Doctrine*

 *Fed.R.Civ.P.* 26(b)(3) establishes a qualified immunity from the discovery of work product. An attorney's work product includes mental impressions, conclusions,

---

**4.** This group is composed of various "lead" Lloyd's syndicates and London Market companies who subscribed to general liability policies against which environmental claims have been made.

**5.** These tasks primarily include the appointment of counsel, the distribution of counsels' reports and memoranda, the collection of counsels' fees

and the dissemination of information to the subscribing insurers.

**6.** *Pittston Company v. Allianz Insurance Co., et al.,* 143 F.R.D. 66 (D.N.J.1992); *North River Insurance Co. v. Philadelphia Reinsurance Corp., et al.,* No. 91–1323 (D.N.J. April 6, 1992), *aff'd,* 797 F.Supp. 363 (D.N.J.1992).

opinions and legal theories done in preparation of litigation. *See Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). Work product is not to be disclosed unless the party seeking discovery has shown a substantial need for the information, and has proven that the information is not obtainable elsewhere without undue hardship. *Remington Arms Co. v. Liberty Mut. Ins. Co.,* 142 F.R.D. 408 (D.Del.1992).

■ Rule 26(b)(3) recognizes a distinction between ordinary and opinion work product. Opinion work product, which includes an attorney's evaluation and strategy concerning a case, is almost always absolutely privileged. *See Sporck v. Peil,* 759 F.2d 312, 316 (3d Cir.1985), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985). As was noted in *Hickman:*

> Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.

*Hickman,* 329 U.S. at 510–11, 67 S.Ct. at 393.

■ Similarly, in *Sporck* the identity of specific documents were requested. The Third Circuit found the documents to be protected work product and held that:

> [W]ithout the protection that the work product doctrine accords his preparation, defense counsel may have foregone a sifting of the documents, or at the very least chosen not to show the documents to petitioner. As a result, petitioner may not have been as well-prepared for his deposition, and neither plaintiff nor defendant would have realized the full benefit of a well-prepared deponent's testimony. For these reasons, Rule 26(b)(3) placed an obligation on the trial court to protect against unjustified disclosure of defense counsel's selection process.

*Sporck,* 759 F.2d at 317.

It is evident that the litigation material that defendants seek from NL falls under the rubric of the work product doctrine. The underlying files contain NL's attorney's mental impressions, conclusions and legal theories regarding litigation claims against plaintiff. Defendants must therefore meet the substantial need requirement under *Fed.R.Civ.P.* 26(b)(3) in order to obtain this information. By arguing that NL's own conduct places "the validity of the underlying claims" at issue, defendants' attempt to demonstrate substantial need. However, defendants are impermissibly consolidating the elements of two separate privilege exceptions (the work product doctrine and the at issues exception) in an attempt to satisfy their showing of substantial need.

In fact, defendants have already been provided with much of the materials they seek. Over 650,000 documents from the underlying litigation files and comprehensive answers to interrogatory requests have been produced by plaintiff.[7] These documents and answers contain the factual material defendants requested. Defendants therefore cannot demonstrate that the information they seek is substantially needed, or that this information may not be produced more easily from another source. As Justice Jackson opined in *Hickman,* "Discovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Hickman,* 329 U.S. at 516, 67 S.Ct. at 396.

### *Attorney–Client Privilege*

■ The attorney-client privilege affords protection to "communications between a lawyer and his client in the course of that relationship and in professional confidence...." *N.J.Evid.R.* 26. The purpose of the privilege is to encourage clients to make full disclosure to their counsel, so that the client may receive the best possible service. *See Macey v. Rollins Environmental Services (NJ),* 179 N.J.Super. 535, 539, 432 A.2d 960 (App.Div.1981). Ju-

---

**7.** Defendants have in their possession documents concerning environmental expert reports and audits, plant inspections and risk assess- ments. Defendants also have information which indicates the amount of plaintiff's attorneys fees.

**230**

dicial recognition has been given to the fact that "the public is well served by sound legal counsel based on full and candid communications between attorneys and their clients." *Fellerman v. Bradley,* 99 N.J. 493, 502, 493 A.2d 1239 (1985). Thus, where the attorney-client privilege is applicable, "it must be given as broad a scope as its rationale requires." *United Jersey Bank v. Wolosoff,* 196 N.J.Super. 553, 561, 483 A.2d 821 (App.Div.1984), quoting *Ervesun v. Bank of N.Y.,* 99 N.J.Super. 162, 168, 239 A.2d 10 (App.Div.1968), *cert. denied,* 51 N.J. 394, 241 A.2d 11 (1968).

This privilege also extends to corporations which must act through their agents. *Wolosoff,* 196 N.J.Super. at 562, 483 A.2d 821. It is recognized, though, that the privilege is "limited to communications made to the attorney in his professional capacity." *Metalsalts Corp. v. Weiss,* 76 N.J.Super. 291, 297, 184 A.2d 435 (Ch.Div. 1962); "[T]he privilege accords the shield of secrecy only with respect to confidential communications made within the context of the strict relation of attorney and client." *Wolosoff,* 196 N.J.Super. at 562, 483 A.2d 821. Within this same context, however, it has been stated that "[t]he necessity for full and open disclosure between corporate employees and in-house counsel ... demands that all confidential communications be exempt from discovery." *Macey,* 179 N.J.Super. at 540, 432 A.2d 960. For example, in *Matter of Grand Jury Subpoenas Duces Tecum Served by Sussex County Grand Jury on Farber,* 241 N.J.Super. 18, 574 A.2d 449 (App.Div.1989), attorneys retained by the county board of freeholders to serve as special counsel were said to be acting in a professional capacity rather than as management-consultants for purposes of attaching the attorney-client privilege. *Id.* at 30, 574 A.2d 449.

NL's underlying claim and litigation files obviously contain privileged documents. The files contain information relating to communications made between corporate employees and NL's attorneys during the course of their professional relationship. Since defendants have not claimed that plaintiff has waived its privilege by disclosing privileged communications from the files to third persons not involved in this matter, nor have they set forth any public policy reasons for piercing the attorney-client shield [8], defendants will not be permitted to overcome plaintiff's attorney-client protection.

*Common Interest Doctrine*

The common interest doctrine has its origins in the joint attorney doctrine. According to 8 WIGMORE, EVIDENCE § 2312 (1992):

> The chief instance occurs when *the same attorney acts for two parties* having a common interest, and each party communicates with him. Here the communications are clearly privileged from disclosure at the instance of a third person. Yet they are not privileged in a controversy between the two original parties, inasmuch as the common interest and employment forbade concealment by either from the other.

*Id.* at 603–04. *See also United Coal Companies v. Powell Constr. Co.,* 839 F.2d 958 (3d Cir.1988); *Eureka Investment Corp. v. Chicago Title Ins. Co.,* 743 F.2d 932 (D.C.Cir.1984).

Under the doctrine, there is no waiver of the attorney-client privilege by disclosure of privileged communications to third parties with a community of interest. A community of interest exists where different persons or entities "have an identical legal

**8.** The New Jersey Supreme Court set forth a tripartite test in *In re Koslov,* 79 N.J. 232, 398 A.2d 882 (1979) stating that the necessary foundations for a valid piercing of the shield:

1. There must be a legitimate need to reach the evidence sought to be shielded;
2. There must be a showing of relevance and materiality of that evidence to the issue before the court;

3. It must be proven by a fair preponderance of the evidence that the information cannot be secured from any less intrusive source. *Id.* at 243–44, 398 A.2d 882. Given the amount of discovery already propounded, defendant insurers have not made a showing or have satisfied this Court in any way that they have a legitimate need to reach NL's files, or that they could not have acquired the underlying information in another manner.

interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice.... The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *Duplan Corp. v. Deering Milliken Inc.*, 397 F.Supp. 1146, 1172 (S.D.S.C.1974). *See also In re State Commission of Investigation Subpoena Number 5441*, 226 N.J.Super. 461, 466, 544 A.2d 893 (App.Div.1988), *cert. denied*, 113 N.J. 382, 550 A.2d 484 (1988); *Weil Ceramics & Glass v. Work*, 110 F.R.D. 500, 502 (E.D.N.Y.1986). The use of the attorney-client privilege in the joint attorney context has been adopted in New Jersey under *N.J.Evid.R.* 26(2)(c) and *N.J.S.A.* 2A:84A–20(2)(c), and was later affirmed in *Historic Smithville Dev. Co. v. Chelsea Title and Guaranty Co.*, 190 N.J.Super. 567, 464 A.2d 1177 (App.Div. 1983).[9]

■ In addition, the common interest doctrine is applicable "only when it has been determined that the defendant insurer is obligated to defend the underlying action brought against the insured," *Nationwide Mut. Ins. Co. v. LaFarge Corp.*, No. H–90–2390, slip op. at 4 (D.Md. June 9, 1992); *See also Carey–Canada, Inc. v. Aetna Cas. & Sur. Co.*, 118 F.R.D. 250, 251–52 (D.D.C. 1987) (insurer's duty to defend had been resolved in favor of coverage prior to discovery dispute), and only when the parties "have *employed* a lawyer to act for them in common." *HM Holdings v. Lumbermens Mut. Cas. Co.*, 259 N.J.Super. 308, 612 A.2d 1338 (N.J.App.Div.1992), quoting *N.J.Evid.R.* 26(2)(c) [emphasis added]. Employment is not created by the fact that the insured's actions inure to the ultimate benefit of the insurer. *HM Holdings*, 259 N.J.Super. at 315, 612 A.2d 1338.

■ It is clear, therefore, that use of the doctrine is warranted in a dispute between an insurer and insured regarding underlying litigation in which the insured was represented by an attorney appointed by the insurer. *See Truck Ins. Exchange v. St. Paul Fire & Marine Ins. Co.*, 66 F.R.D. 129 (1975); *Longo v. American Policyholders Ins. Co.*, 181 N.J.Super. 87, 436 A.2d 577 (Law Div.1981).

■ To permit insurers, however, unrestrained access to attorney-client communications and work product where those insurers refused to take part in litigation despite notice and an opportunity to participate would distort the "common interest" doctrine. As the court stated in *HM Holdings*, "Given the plain language of this rule [*N.J.Evid.R.* 26], common interest alone, without more, does not invoke the exception." *HM Holdings*, 259 N.J.Super. at 315, 612 A.2d 1338. This is so because when a carrier has denied coverage to its insured, the insured is put on notice that it must sue in order to obtain coverage. Any materials prepared afterwards, therefore, are done so in anticipation of litigation pertaining to coverage, and with the expectation that they will be privileged. *See Hatco Corp. v. W.R. Grace & Co.*, No. 89–1031, 1991 WL 83126 (D.N.J. May 10, 1991).

It was suggested in *SCM Corp. v. Lumbermens Mut. Cas. Co.*, No. L–96187–87, slip op. at 4 (N.J.Super.Ct. Sept. 20, 1991) that a common interest may be found where the insured's attorney acts on behalf of the insurance carriers. An example of such actions include the mailing of insurer status reports, the requesting of settlement advice and participating in meetings with insurers with respect to underlying actions. *Id.*

The behavior of the parties in the instant case are distinguishable from the behavior of the litigants in *SCM*. Although defendants may be relieved of indemnity obligations if plaintiff succeeds in the underlying claims, there is no common interest as to the outcome of the coverage action.[10] In

---

9. As stated under these authorities, "Where 2 or more persons have employed a lawyer to act for them in common, none of them can assert such privilege as against the others as to communications with respect to that matter."

10. There exists authority for the position that in an adversarial setting between an insurer and a policyholder concerning coverage "the two maintain a common interest in the underlying litigation with respect to the ultimate liability for payment to the underlying claimants."

fact, an adversarial relationship existed between plaintiff and defendants from the time that defendants denied coverage to plaintiff, and not at the later point that this action was filed, as was the circumstance in *SCM*. Therefore, while the documents were found discoverable in *SCM*, they are to remain privileged here.

The facts in *Historic Smithville* and in *HM Holdings* are more similar to the situation at bar. In *Historic Smithville*, plaintiff sued defendant title insurer for counsel fees incurred after plaintiff hired outside counsel to litigate a land fraud action. Plaintiff was forced to engage separate counsel from the outset, because it was clear that the position of plaintiff and its insurer were "hopelessly incompatible"; no intention was ever present to mount a joint defense. The appellate division found, therefore, that the common interest exception would not apply as the insurer never had an actual attorney-client relationship with plaintiff's counsel. *Id.* 190 N.J.Super. at 570–73, 464 A.2d 1177. *See also Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 408 (D.Del.1992) (doctrine not applicable where attorney never represented party seeking privileged materials).

The same result was reached in *HM Holdings* where the defendant insurers, in an environmental insurance declaratory judgment action, never defended the claims against plaintiff nor paid the defense costs of the underlying litigation. The court found that:

> Despite the trial judge's conclusion that the parties were not adversarial until the declaratory judgment action was filed, it is clear that an adversarial line was drawn very early in the matter by the insurer's refusal to defend. There is no indication that counsel hired by plaintiffs to protect their own interests ever intended to conduct a joint defense with

the insurers. There was no attorney-client relationship between plaintiff's counsel and the defendant insurers. Therefore, the foregoing exception is unavailable to the defendants as a means of compelling plaintiff's privileged documents.

*HM Holdings*, 259 N.J.Super. at 314, 612 A.2d 1338.

Pursuant to the decisions in *HM Holdings*, *Hatco Corp.* and *Historic Smithville*, the use of the doctrine sought by defendants in the instant case is not the application intended by statute, by rule, or by persuasive precedent. Defendants have refused to provide coverage or to defend plaintiff in any way. Mere status as an insurer or an insured is not enough to establish a commonality of interest.

### At Issue Doctrine

■ The "at issue" doctrine becomes involved when a party has asserted a claim or defense that he intends to prove through the use of privileged materials. *Remington Arms*, 142 F.R.D. at 415; *North River Ins. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370 (D.N.J.1992). A party may be said to have impliedly waived the privilege protecting its information by taking an action that places such information at issue. *See Remington Arms* at 410; *National Union v. Rhone–Poulenc*, No. 87C–SE–11, slip op. at 2, 1992 WL 111201 (Del.Super.Ct. May 12, 1992).

■ Due solely to the fact that a party puts a question at issue, however, which creates a "divergence of claims between the parties who would normally be on the same side, does not itself mean that the plaintiff has to give up, blanket-wise, all of the privileges that have been bestowed upon attorneys by our law." [11] *Reichhold Chemicals v. Hartford Acc. & Indem. Co.*,

---

*Waste Management, Inc. v. International Surplus Lines Ins. Co.*, 144 Ill.2d 178, 161 Ill.Dec. 774, 579 NE.2d 322 (1991). The opposite position has been taken, though, by New Jersey courts and others, stating that the common interest held by insurers and policyholders to resolve claims is not sufficient to overcome the attorney-client privilege where no joint defense has been undertaken.

**11.** Since privileges serve an important part in the preservation of law and the administration of justice they cannot be disregarded lightly. *See Remington Arms*, 142 F.R.D. at 412; *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).

No. 88–0351982, slip op. at 2 (Conn.Super.Ct. Feb. 1, 1991). Materials which are prepared in "anticipation of problems" between an insurer and its insured remain privileged and are not placed in issue. *Carey–Canada*, 118 F.R.D. at 251–252. Stated the court in *Carey–Canada:*

> [T]he coverage dispute between plaintiffs and the insurance carriers arose and has continued throughout the period during which plaintiffs have pursued settlement negotiations in the underlying cases. It is evident, then that the documents at issue were prepared in an atmosphere of uncertainty as to the scope of any identity of interest shared by plaintiffs and Aetna. In this context plaintiffs could reasonably have expected that documents concerning settlement in underlying cases would be privileged and hence undiscoverable by their carriers.

*Id.*

Furthermore, it was noted by the court in *National Union:*

> Unlike issues involving ... settlement and attorneys fees, in which the conduct of [the insured] and its lawyers in the underlying actions form the basis for recovery, with respect to these issues [involving the actions and knowledge of the insurer at the time of the conduct challenged in the underlying lawsuit] the activities of [the insured] can at most constitute evidence of what occurred before those suits arose. That it might constitute very good evidence, it seems to me, does not form the basis for an implied waiver. [The insured] has not injected its underlying-suit conduct with respect to these issues so as to require that it not be accorded attorney-client and work product privilege.

*National Union*, slip op. at 7.

██ Defendant insurers claim that NL has put its conduct in issue by attempting to obtain coverage, and therefore has impliedly waived any privileges with respect to the litigation files in issue. Such is not a correct interpretation of the relevant case law; courts have rejected such a broad interpretation of the at issue doctrine for several reasons.

First, materials which have been held to be discoverable by other courts, and what has already been discovered in this case are documents relating to incidents of spills and leaks, testing reports and samples prepared by environmental consultants concerning the representative test sites. *See SCM*, slip op. at 15–16. These documents are relevant as to the insured's knowledge of existing environmental hazards and whether the occurrence was "unexpected or unintended" under the policies.

Second, NL's materials were prepared in an "atmosphere of uncertainty" and were never intended to be discoverable. *See Carey–Canada*, 118 F.R.D. at 251–252; *National Union*, slip op. at 7. It was reasonable for plaintiff to expect that these materials would remain privileged, because its carriers drew the "adversarial line." *See HM Holdings*, 259 N.J.Super. at 314, 612 A.2d 1338.

Third, the privileged information sought to be obtained must be substantially needed and must not be securable from any less intrusive source. *See HM Holdings* at 318, 612 A.2d 1338; *Wolosoff*, 196 N.J.Super. at 557–58, 483 A.2d 821. Defendants have not made the requisite showing in the instant case. The court in *HM Holdings*, for example, suggested that such a showing would be satisfied if a significant witness or employee had passed away before discovery could be taken from that person, in which case "the interview report of a deceased employee would qualify [as being substantially needed and not obtainable by a less intrusive source]." *HM Holdings*, 259 N.J.Super. at 319, 612 A.2d 1338. Absent such a circumstance, "the insurers should develop their own information from the factual material and sources provided." *Id.*

Finally, while it is true that the availability of the privileged materials sought in the instant case would make it much easier for defendants to develop their suits, such is not the criteria for a waiver of the attorney-client or work product privileges. If ease of application were the criterion, "the privileges would cease to exist." *National Union*, slip op. at 7. Rather, the basis of

the privileges is in weighing the hardship of impeded discovery by the necessity that a client be able to communicate freely with his attorney. *Id.* at 8.

For the foregoing reasons, defendants are not entitled to any discovery of plaintiff's privileged documents under the at issue exception.

## II. The Request for ECG Discovery

Pretrial discovery in federal courts is governed by the Federal Rules of Civil Procedure. The amount of discovery allowable, while broad, is not unlimited. For example, it is not necessary that the information sought during the discovery process be admissible at trial, *Bowman v. General Motors Corp.*, 64 F.R.D. 62, 66–71 (E.D.Pa.1974), but the information must be "relevant to the subject matter involved in the pending action...." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978). In addition, while the relevance of the discovery sought is a major factor to be considered in determining the amount of discovery to be propounded, it is not conclusive. Purported relevance, especially if marginal, must be weighed against other factors, including burdensomeness. *See Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 106 (D.N.J.1990), *aff'd*, No. 89–1701 (D.N.J. Aug. 31, 1990); *Monsanto Co. v. Aetna Cas. & Sur. Co.*, No. 88C–JA–118, slip op. at 2 (Del.Super.Ct. May 30, 1990).

In the instant case, the information NL seeks, all documents relating to the ECG, primarily consists of voluminous administrative materials. As the ECG did not handle specific individual claims, almost all of their position papers relate strictly to administrative matters which are not relevant to an understanding of the NL policies at issue. It was found in *Central Illinois Public Service Co. v. Allianz Underwriters Ins. Co.*, No. 90–L–11094 (Ill.Cir.Ct. February 1, 1991), for instance, that the position papers in issue consisted of nothing more than an interpretation of the cur-

rent state of American insurance law, as based upon attorneys' opinion, and was therefore not relevant to the individual policies in issue. Slip op. at 2–3. In fact, Judge Warren D. Wolfson stated that "[t]here is no privilege because there are no client communications at all. The papers contain no views, no statements of the insurance companies, nothing more than lawyers' speculation which in my view has no relevance whatever to these proceedings." *Id.* at 6.

It is acknowledged by this Court that certain ECG papers have been ordered disclosed in other Third Circuit cases. *See Hatco Corp.*, slip op. at 16 (ruling that Second, Third and Seventh position papers and the two Cover Letters are not protected as work product); *In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation* (Texas Eastern), No. 764, slip op. at 5, 1990 WL 139403 (E.D.Pa. Sept. 18, 1990) (found no documents maintained as privileged); *Public Service Elec. & Gas Co. v. Assoc. Elec. & Gas Ins. Services, Ltd.* (PSE & G), 745 F.Supp. 1037 (D.N.J.1990) (found no documents maintained as privileged). The ECG papers have not been disclosed to adversaries, however, except as required by court order. Thus, the only other groups having access to these materials have been insurers who have the same interests as defendants. This fact is significant because the work product doctrine only protects information from disclosure to opposing parties. *United States v. American Telephone & Telegraph Co.*, 642 F.2d 1285, 1299 (D.D.C.1980). Disclosure to parties having the same interest, therefore, does not result in a waiver of the work product doctrine. *Id. See also Hatco*, slip op. at 17; *In re Doe*, 662 F.2d 1073, 1081 (4th Cir.1981), *cert. denied*, 455 U.S. 1000, 102 S.Ct. 1632, 71 L.Ed.2d 867 (1982); *In re Sunrise Securities Litigation*, 130 F.R.D. 560, 564 (E.D.Pa.1989).

Although a broader scope of documents have been disclosed by order in *Texas Eastern* and *PSE & G* that were not so ordered in *Hatco*[12], I do not find that defendants

12. All ECG papers sought by NL other than the Second, Third and Seventh position papers and the two cover letters.

have waived the work product privilege as to those documents in this case. *See Hatco,* slip op. at 18; *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989).

The test to determine whether the work doctrine applies to certain materials was stated in *In re Grand Jury Investigation,* 599 F.2d 1224 (3d Cir.1979):

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because* of the prospect of litigation.

*Id.* at 1229. In *Hatco Corp. v. W.R. Grace & Co.,* No. 89–1031, 1991 WL 83126 (D.N.J. May 10, 1991), Judge Wolin also concluded that the ECG papers which expressed coverage and liability issues and which contained attorney opinion were prepared "because of the prospect of litigation" and would be afforded work product protection. *Id.* at 11. These exact ECG papers are involved in the instant case and were prepared for the same reason as expressed in *Hatco.* Thus, the ECG material found privileged in *Hatco,* which is the only ECG material relevant in the action at bar, is similarly privileged here.

### CONCLUSION

For the aforementioned reasons, defendants' discovery request is denied on the basis that the material sought is privileged, while plaintiff NL's request for the ECG position papers other than the Second, Third and Seventh papers and the two cover letters is denied because the papers are either not relevant to this litigation or are protected by the work product privilege.

SO ORDERED.