45 F.3d 426
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 LAWYERS TITLE INSURANCE COMPANY, Plaintiff-Appellee,
v.
CAE-LINK CORPORATION, Defendant-Appellant.
 No. 94-1434.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 5, 1994.
Decided Jan. 10, 1995.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. M. J. Garbis, District Judge. (CA-92-3249-MJG).
 ARGUED: David Henry Bamberger, PIPER & MARBURY, Washington, DC, for Appellant. Griffin Vann Canada, Jr., MILES & STOCKBRIDGE, P.C., Rockville, MD, for Appellee.
 D.Md.
 AFFIRMED.
 Before HALL and MURNAGHAN, Circuit Judges, and LAY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 CAE-Link Corporation appeals the summary judgment awarded in favor of Lawyers Title Insurance Corporation in a declaratory judgment action brought by Lawyers Title to resolve whether CAE-Link is covered by a title insurance policy. We affirm.
 
 
 2
 * Under the terms of a 1956 deed, the land comprising Montgomery Industrial Park in Montgomery, Maryland ("Park"), was subject to a covenant against the dumping or storage of waste material. The Link Division of the Singer Corporation operated a manufacturing facility on a leased parcel in the Park. In July 1980, a local government agency, the Washington Suburban Sanitary Commission (WSSC), condemned a parcel in the Park and built a sewage sludge composting facility. WSSC also filed an action in state court for a declaration that the agency incurred no liability to the other property owners in the Park as a result of the violation of the covenant occasioned by the operation of the composting facility (the Frankel case).
 
 
 3
 In March 1981, Singer purchased the parcel. Lawyers Title issued a title insurance policy that provided that "the Restrictive Covenants [in the 1956 deed] are enforceable by the insured." The term "insured" was defined as Singer and "those who succeed to the interest of [Singer] by operation of law as distinguished from purchase including, but not limited to, heirs, distributees, devisees, survivors, personal representatives, next of kin, or corporate or fiduciary successors."
 
 
 4
 In 1984, the state court ruled that the covenant was a compensable property interest of the other property owners in the Park. Washington Suburban Sanitary Commission v. Frankel, 470 A.2d 813 (Md.App. 1984), vacated on other grounds, 487 A.2d 651 (Md.1985). Singer and the other affected property owners promptly counterclaimed under theories of nuisance and inverse condemnation.
 
 
 5
 In 1987, Singer began a reorganization, which included the incorporation of various divisions. In December 1987, the Link Division was incorporated in Delaware as Link Military Simulation Corporation ("Link Corporation"), a wholly owned subsidiary of Singer, and Singer distributed 589,933 shares of Singer common stock to this new corporation. Under the reorganization plan, certain assets of the former Link Division, including the Park property, were to be conveyed to the Link Corporation in exchange for the 589,933 shares of Singer stock. On April 25, 1988, Singer conveyed the property to Link Corporation by special warranty deed.
 
 
 6
 On August 5, 1988, Singer sold all of the stock in Link Corporation to CAE-Industries of Canada, which in turn merged Link into a newly incorporated and wholly-owned subsidiary, CAE-Link Corporation. CAE-Link thus became the owner of the Park property and was substituted as a party in the Frankel case.
 
 
 7
 In 1992, the Maryland Court of Special Appeals ruled that CAELink lacked standing to pursue an inverse condemnation claim against WSSC, because the July 1980 condemnation by WSSC had extinguished the covenant by the time Singer acquired the property in September 1980.[1] CAE-Link Corp. v. Washington Suburban Sanitary Commission, 602 A.2d 239 (Md.App.1992), aff'd, 622 A.2d 745(Md.), cert. denied, 114 S.Ct. 288 (1993).
 
 
 8
 CAE-Link then turned to Lawyers Title and filed a claim under the policy issued to Singer in 1981. Lawyers Title denied coverage and filed this declaratory judgment action in state court to have the coverage question determined. CAE-Link removed the action to federal court on the basis of diversity of citizenship. The district court ruled that the conveyance by Singer to Link Corporation in 1988 constituted a "purchase" of the property rather than a succession to Singer's interest "by operation of law" and, therefore, under the terms of the policy, coverage ended at that point. Accordingly, the court granted Lawyers Title's motion for summary judgment. CAE-Link appeals.
 
 II
 
 9
 The parties agree that the district court correctly focused on the April 1988 conveyance from Singer to Link Corporation.[2] CAE-Link contends, however, that the 1988 conveyance was one by "operation of law" because Link obtained the property as part of a corporate reorganization. We agree with the district court that the conveyance constituted a "purchase" under the terms of the policy.
 
 
 10
 The essence of CAE-Link's argument is that the Link Corporation was in reality a "corporate successor" to Singer's Link Division and that the conveyance was merely part of the overall reorganization plan that was being undertaken pursuant to a written Merger Agreement.[3] The April 1988 deed to Link Corporation was "merely confirmatory and did not reflect a purchase of the property."[4] An alternative argument is that the policy is ambiguous and that such ambiguity must be construed in favor of coverage. We find no ambiguity.
 
 
 11
 When Link was formed as an independent corporation in 1987, it became legally capable of buying and selling property in its own name. Food Fair Stores, Inc. v. Blumberg, 200 A.2d 166 (Md.1964) ("[A] subsidiary corporation, for whatever purpose it may exist, is a separate entity, even though all its stock may be owned by another corporation"). CAE-Link has failed to demonstrate why Link Corporation's acquisition of real property, obtained in exchange for value and evidenced by a deed filed in the Montgomery County land records, is not a "purchase" as that term is commonly understood. See Pioneer National Title Insurance Co. v. Child, Inc., 401 A.2d 68 (Del. 1979) (holding, in case involving the same "operation of law/purchase" policy language as the Singer policy, that the term "operation of law" did not encompass transactions that required the voluntary acts of the parties to effect a particular transaction). In Historic Smithville Dev. Co. v. Chelsea Title & Guar. Co., 445 A.2d 1174 (N.J.Super. Ct. Ch.Div.1981), aff'd in part and rev'd in part on other grounds, 464 A.2d 1177 (N.J.Super. Ct.App. Div.1983), a case relied upon by CAE-Link, coverage was found where corporate assets were distributed to shareholders pursuant to a corporate dissolution. The distinguishing factor is that the shareholders were not buying the property. Instead, the distribution of corporate assets, which proceeded according to the laws of Delaware, was the "perfunctory discharge of a legal obligation to invest shareholders with assets to which they are entitled." Id. at 290.
 
 
 12
 CAE-Link has not apprised us why the transfer of property to Link Corporation was structured as it was. From the record before us, it is clear that the deed to Link was necessary to transfer title. Such a deed cannot be considered as being "merely confirmatory"; instead, it unambiguously evidences a purchase. The title insurance policy issued to Singer expired by its terms when Link Corporation bought the property. CAE-Link's claim for coverage is unavailing.
 
 
 13
 AFFIRMED.
 
 
 
 [1]
 The court ruled, however, that CAE-Link could continue to pursue the nuisance claim
 
 
 [2]
 Lawyers Title does not contest the district court's assumption that the title to the property passed from Link Corporation to CAE-Link "by operation of law" and, therefore, if Link were covered by the policy, CAE-Link would also by covered. See Lawyers Title Insurance Corp. v. CAE-Link, C/A MJG-92-3249, at 6 n. 4 (D. Md. Mar. 7, 1994) (Corrected Memorandum and Order)
 
 
 [3]
 This Agreement is not part of the record
 
 
 [4]
 Appellant's brief at 7